**PATTEN FINE PAPERS, Inc., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 12059.**

United States Court of Appeals Seventh Circuit.

Nov. 26, 1957.

Robert E. Nelson, Green Bay, Wis., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Karl Schmeidler, Atty., Tax Division, Dept. of Justice, Washington, D. C. (Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before FINNEGAN, LINDLEY and PARKINSON, Circuit Judges.

LINDLEY, Circuit Judge.

This petition for review of a decision of the United States Tax Court raises essentially three issues: first, should petitioner Patten Fine Papers, Inc., a personal holding company, be allowed to deduct its federal income tax paid in 1950 in computing its undistributed subchapter A net income for 1950; second, may it deduct the net capital loss of a wholly owned subsidiary for a year in which the subsidiary was liquidated; and, third, may it deduct the net capital loss of the same subsidiary for the year prior to the year of liquidation. Each of these issues was decided against petitioner.

The taxpayer was organized as a corporation under the laws of Wisconsin in 1937 to take over the assets of a defunct paper manufacturing corporation. It has never operated as a manufacturer, but has derived income from deals in securities, dividends and interest. Its capital stock, at the time of the transactions involved, was owned by various members of the Rosebush family. The so-called affiliated corporation Rosebush Brothers was organized under the laws of New York in 1913 by certain members of the same family to acquire and man-

age, certain of the assets of their father's estate in Alfred, New York. Its income was derived from rental of properties and income from securities which it owned. Of its 250 shares of common stock, 170 were held by the taxpayer and the balance by members of the family. By the end of the year 1948 it had liquidated all its real estate interests and its only remaining assets consisted of cash $144.71, accounts receivable $9,139.92 and securities, $5,275.00. For that year it filed an income tax return in which it reported a net capital loss for the year of $9,887.08. On January 3, 1949 the taxpayer purchased all the remaining stock of Rosebush, so that thereafter it owned all of the 250 shares except 1 share each held by three members of the Rosebush family for qualification as director. Later that same year, on November 26, 1949, Rosebush adopted a resolution to dissolve and to surrender its charter to the State of New York. At that time the corporation delivered all its assets to the taxpayer in exchange for the surrender of all its capital stock. Those assets consisted of a small amount of cash and an account receivable due from Patten. It had disposed of all other assets. On December 1, 1949 the corporation filed a certificate of dissolution with the State of New York and became completely dissolved. For the 11 months of 1949 it reported an income of dividends $153.30, interest $12.00, and a net long term capital loss of $7,417.66. For the year 1949 Patten filed a consolidated federal income tax return reporting consolidated income deductions and credits of Patten and its affiliate Rosebush. Rosebush consented to the filing of a consolidated return. On this return the taxpayer claimed a capital loss carry-over of Rosebush from the year 1948. This the commissioner disallowed. Both Patten and Rosebush kept their records and reported their income on the basis of cash receipts and disbursements. For the year 1949 Patten's sub-chapter A net income without considering any net capital loss of the liquidated subsidiary Rosebush, was $74,009.98.

In addition to the consolidated income tax return for 1949 Patten filed a personal holding company return and, in computing its sub-chapter A net income, claimed deductions of (1) a net capital loss of $7,417.66, incurred by Rosebush during the period from January 1 to December 1, 1949; (2) a capital loss carry-over of Rosebush in the amount of $9,887.08 for the year 1948; and, (3) accrued federal income taxes for the year 1949 in the amount of $11,456.41. The commissioner ruled that Patten was not authorized to utilize either the net capital loss or the capital loss carry-over of Rosebush in computing its sub-chapter A net income but did allow a deduction of $16,416.85 for accrued federal income taxes for the year 1949. Throughout 1950 Patten continued to be a personal holding company. Its sub-chapter A net income for the year was $7,108.95 and during that year it paid the accrued tax liability for the year 1949 in the amount of $11,456.41.

In its personal holding company return, in computing its sub-chapter A net income, it deducted $11,456.41 federal income tax paid during 1950 on account of its tax liability for the year 1949. This deduction the commissioner disallowed and the tax court upheld the commissioner.

We consider first the question of whether Patten may deduct in its 1949 consolidated income tax return a capital loss carry-over of Rosebush, the liquidated subsidiary, for the preceding year, that is, 1948, prior to the filing of any consolidated returns. This attempted carry-over of Rosebush's loss in 1948 amounted to $9,887.08, and in the years 1949 and 1950, in computing the taxpayer's personal holding company taxes, and in computing its sub-chapter A net income for 1949, Patten reduced its net income first by the $9,887.08 capital loss carry-over of Rosebush for 1948 and by the net long term capital loss of $7,417.66 incurred by Rosebush during 1949, and accrued federal income taxes for the year 1949 in the sum of $11,456.41, all of

which, as we have observed, the commissioner disallowed, except that he permitted a deduction for accrued federal income taxes for the year 1949. In 1950 Patten deducted $11,456.41 as tax paid on its tax liability for 1949 and this the commissioner disallowed.

■ Under Section 141 of the 1939 Code, 26 U.S.C.A. § 141, affiliated groups of corporations may file a consolidated return provided all corporations which at any time during the taxable year have been members of the affiliated group consent to such return. Both Patten and Rosebush consented. Under Section 117 (e) (1) if a "taxpayer" has a net capital loss the amount thereof shall be considered a short term capital loss in each of the five successive years to the extent that it exceeds the total of any capital gain in each of the intervening five years. And under Sections 23.31(b)(2)(IX) and (d)(10) and 23.42(c) Treasury Regulation 104, a capital loss under Section 117(e) of an affiliated company may be carried over in computing a consolidated net income. But if the loss occurred during the year prior to the filing of the first consolidated return, under Regulation 104 which is not questioned here, the amount of the capital loss which may be carried over may not be deducted for any loss which was not absorbed by the net capital gains of the corporation which has sustained the loss. In other words, the capital loss sustained in the year in which separate returns are filed may be carried back in a consolidated return for a subsequent year only against subsequent net capital gains of the corporation which has incurred the loss and may not be carried over and charged against consolidated net capital gains. Inasmuch as Rosebush did not have any net capital gains for the taxable period from January to December, 1949, under Regulation 104, Patten was not permitted to utilize in its 1949 consolidated income tax return any of Rosebush's capital loss carry-over from 1948. This the taxpayer seems to admit, but it insists that by reason of the liquidation and dissolution of Rosebush, Patten

became a successor corporation to Rosebush and that the latter's 1948 net capital loss subsequent in 1949 became that of Patten to be applied against Patten's 1949 capital gain.

■ We are unable to agree with this contention. The taxpayer elected to file a consolidated return for 1949. The sections of the Treasury Regulations referred to govern the extent to which Patten may make use of the net capital loss carry-over to Rosebush. American Trans-Ocean Nav. Corp. v. Commissioner, 2 Cir., 229 F.2d 97, 98. Under them we think that Patten is denied the right to avail itself of the deduction in the instant case inasmuch as the loss was incurred by Rosebush in the year prior to the filing of any consolidated return and Rosebush did not have any net capital gain for 1949.

■ There is a further reason we think, why this conclusion is correct. The use by Patten of Rosebush's 1948 net loss is governed by Treasury Regulation 104. Section 23(g) of the 1939 Code, 26 U.S.C. § 23(g) authorizes allowances of loss from sales or exchanges of capital to the extent provided in Section 117(d) which allows losses of corporation only to the amount of gains from such sales, and subsection (e)(1) provides that a taxpayer's net capital loss may be carried over in each of the five succeeding years only insofar as the loss exceeds the total of any net capital gains of any of the five years.

■ In this connection Patten insists that by virtue of the liquidation of Rosebush and acquisition of its cash and receivables, it became the same taxpayer as Rosebush and therefore is entitled to carry over and deduct as its loss Rosebush's net capital loss from 1948, and cites various cases in support of its contention. However, we are of the opinion that in view of the Supreme Court's decision in Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924, Patten may not deduct the 1948 net capital loss of Rosebush for the year 1948 in its accounting for 1949. Obviously, under the law there may be carried over

"only as there is clear provision therefor." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 790, 78 L.Ed. 1348. This is because the allowance of the loss carry-over is a remedial exception to the established system. See Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725. We think Section 117(e)(1) contemplates permission of one taxpayer to carry over and deduct a net capital loss from one year to another only "if * * the taxpayer has a net capital loss." We cannot read into the statute any interpretation that will do violence to the thought that the only taxpayer authorized to carry over a loss is the taxpayer who sustained the loss. Thus, in New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 441, 54 S.Ct. 788, 790, the Supreme Court said: "* * * the statutes have disclosed a general purpose to confine allowable losses to the taxpayer sustaining them, *i. e.*, to treat them as personal to him and not transferable to or usable by another. * * * Taken according to their natural import they mean that the taxpayer who sustained the loss is the one to whom the deduction shall be allowed. Had there been a purpose to depart from the general policy in that regard, and to make the right to the deduction transferable or available to others than the taxpayer who sustained the loss, it is but reasonable to believe that purpose would have been clearly expressed." In other words, the general policy of the statutes is "to confine allowable losses to the taxpayer sustaining them, *i. e.*, to treat them as personal to him and not transferable to or usable by another."

In addition it should be observed that there was no continuity of business between the two corporations. Rosebush was out of business; it had ceased to do any business; consequently, when it was dissolved, there was no continuity of its business. Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924. As we have seen, a prior year's loss can be offset against the current year's income only to the extent that this income is derived from the operation of substantially the same business which produced the loss, the Supreme Court saying in 353 U.S. at pages 386, 387, 77 S.Ct. at page 993: "The requirement of a continuity of business enterprise as applied to this case is in accord with the legislative history of the carry-over and carry-back provisions. * * * There is, however, no indication in their legislative history that these provisions were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger. What history there is suggests that Congress primarily was concerned with the fluctuating income of a single business." In that case the Supreme Court distinguished the cases upon which Patten relies. There, there was no continuity, and we think this case falls within the doctrine announced.

There is a further contention that Rosebush was merged into Patten. As a matter of fact, it was liquidated on December 1, and dissolved, so that its existence was terminated; it did not survive as a component of Patten. We do not think liquidation and dissolution are equivalent to a merger. This is apparent from a consideration of the statutes of New York governing dissolution of New York Corporations, Stock Corporation Law, McKinney's Consol.Laws, c. 59, § 105 of which provides for the termination of the corporate existence and permits no continuance except for the purpose of winding up its affairs. The distinction between a merger and a liquidation would seem to be obvious.

We are of the opinion also that Patten may not make use of a 1949 net capital loss incurred by Rosebush in calculating Patten's 1949 sub-chapter A net income in its personal holding tax return. It is to be remembered that Rosebush sustained a long term capital loss of $7,417.66 in the period between January 1 and December 1, 1949. In the consolidated income tax return Patten deducted this capital loss which the com-

missioner allowed as a deduction in Patten's 1949 consolidated income tax return but disallowed in Patten's 1949 personal holding company tax return, for the reason that Patten had no authority to file a consolidated return for 1949. We do not understand that the taxpayer contends now that it was authorized to file a consolidated personal holding income tax return for 1949 but it does assert that it is entitled to deduct the 1949 net long term capital loss of Rosebush as the successor in liquidation of Rosebush. This contention follows essentially the same argument that the taxpayer urges for allowing the carry-over of Rosebush's net capital loss on Patten's consolidated 1949 income tax return. From what we have said we think it clear that Patten may not take either of the deductions in its 1949 personal holding company tax returns.

 We reach the third issue, *viz.*, whether the taxpayer properly deducted, under Section 505(a) (1), of the Internal Revenue Code of 1939, 26 U.S.C.A. § 505 (a) (1), from its sub-chapter A net income for the year 1950, the taxes it paid in that year being its accrued income tax for 1949. There is some contrariety of opinion in the various circuits in this respect, but we adhere to the reasoning of our opinion in De Soto Securities Co. v. Commissioner, 7 Cir., 235 F.2d 409. There we held clearly that without any statutory amendment to Section 505(a) (1) to the 1939 Code the words "paid" or "accrued" as there used are to be viewed as relating to the method of accounting employed, that is, the cash or accrual basis, and we held, in no uncertain terms, that a taxpayer on a cash basis was entitled to deduct accrued taxes in the year in which he pays them. To this we adhere. Consequently, in this respect, the tax court erred insofar as the law as construed by this circuit is to the contrary.

■ The commissioner insists, however, that inasmuch as the taxpayer deducted the taxes as accrued in the year 1949 it is too late for a claim that they should be deducted in the year they were paid. The taxpayer was on a cash basis but, under some mistaken theory, it took the deduction in 1949 and now claims that it was in error as to the proper year for the deduction, and asserts the right to have it in 1950, the year in which the taxes were paid, as it was on a cash basis. We find no elements of estoppel or election in this respect. The matter is still before the commissioner and the decision of the tax court to the effect that the taxes should have been deducted in 1949 is erroneous. Under De Soto they are deductible in the year 1950 when paid.

In view of our conclusions the decision of the tax court is reversed insofar as it holds that this last-mentioned deduction is properly allowable for the year 1949. That part of the decision will be set aside and deduction allowed for the year 1950. This part of the decision is reversed and remanded to the tax court for further procedure in accord with this opinion. In all other respects, the decision is affirmed.