**In re Melvin L. LUSTER and Harold E. Friedman, Debtors.**

**Bankruptcy Nos. 78 B 9574, 78 B 9575.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 21, 1991.

· Dennis E. Quaid, trustee.

Maynard Russell, Michael L. Stone, Fagel, Haber & Maragos, Chicago, Ill., for trustee.

R. Villageliu, Office of Dist. Counsel, I.R.S., Chicago, Ill., for I.R.S.

Thomas D. Newbold, Asst. Atty. Gen., Chicago, Ill., for U.S.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

The two cases now before the court have been considered together because they present the identical legal issue: whether the trustee in a liquidating bankruptcy under the 1898 Bankruptcy Act may claim, as property of the estate, net operating loss ("NOL") carryovers to which the debtors would have been entitled outside of bankruptcy. This issue has been raised by the trustee's motions for summary judgment in each of the cases. For the reasons discussed below, the court finds that the debtors' prepetition NOL carryovers are available to the trustee.

## FINDINGS OF FACT

The trustee and the IRS are not in dispute regarding the facts in these cases. On December 6, 1978, Melvin Luster and Harold Friedman voluntarily filed individual petitions for relief under the Bankruptcy Act of 1898, 30 Stat. 544, as amended (repealed 1979) (the "Bankruptcy Act"). A major asset in each estate was a real estate partnership, Sheridan Ardmore Properties ("SA Properties"), in which both Luster and Friedman had a substantial interest.

During 1980, the assets of SA Properties were sold, and the partnership terminated. As a result, there was considerable income to the estates, both from rent receipts before the sale, and from capital gains. The trustee filed 1980 fiduciary tax returns with the Internal Revenue Service for both estates, and in each return the trustee

claimed NOL carryovers that accrued after the filing of the bankruptcy cases. The return for Luster's bankruptcy estate showed a $203,735 tax liability, based on $315,818 in 1980 income subject to tax, after application of a $5,454 loss carryover from 1979. Friedman's bankruptcy estate showed a $204,998 tax liability, based on $317,624 of 1980 income subject to tax, after application of a $3,725 loss carryover from 1979. The trustee also filed claims in the bankruptcy cases on behalf of the IRS for this tax liability.

Subsequently, the trustee became aware of prepetition NOLs that the debtors had not used, and filed amended 1980 fiduciary tax returns incorporating these NOLs. The amended returns showed no tax liability. For Luster, the trustee claimed $1,554,058 in unused pre-petition NOLs, including $327,733 from 1976 and $191,004 from 1975.[1] For Friedman, the trustee claimed $1,584,257 in unused pre-petition NOLs, including $286,039 from 1976 and $1,050,653 from 1974. The trustee, accordingly, objected to the claims he originally filed on the IRS's behalf, since in his view the newly discovered NOLs eliminated the debtors' 1980 income tax liability. The IRS responded that the prepetition NOL carryovers are not available to the estates, and the trustee filed summary judgment motions to resolve the dispute.

## CONCLUSIONS OF LAW

Jurisdiction.

■ Claims adjudication, as well as determination of the debtor's tax liability, was within the jurisdiction of the bankruptcy court under the Bankruptcy Act § 2(2), (2A), 11 U.S.C. § 11 (1898) (amended 1966). These matters are now properly before this

court after review and remand from the district court pursuant to the February 1, 1988, order of Judge Prentice H. Marshall.[2]

Appropriateness of summary judgment.

Summary judgment may be rendered pursuant to Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate here because, as noted above, the only issues before the court are legal.

Availability to the trustee of prepetition NOLs.

The principal issue raised by the pending cases is the transferability of prepetition tax attributes to bankruptcy estates. In 1978, when the present debtors filed their petitions, this issue had not been resolved either by legislation or by judicial interpretation. The legislative history of the Tax Act of 1980 ("Tax Act"), P.L. 96–589, 94 Stat. 3389, which was designed to remove the uncertainty, explains the situation:

> At present, there are no rules in the Internal Revenue Code specifying whether the bankruptcy estate constitutes a taxable entity apart from the individual debtor; and, if so, how tax attributes are to be allocated between the estate and the debtor. This has resulted in uncertainty and litigation concerning the Federal income tax liability of the bankruptcy estate and the debtor.

S.Rep. No. 96–1035, 96th Cong., 2d Sess. 24 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 7017, 7039.[3] Judicial deci-

---

1. It appears that $313,326 may be the correct 1976 NOL based upon the exhibits offered, but the court accepts the figures in the trustee's affidavits and Statement of Uncontested Facts since these were not disputed by the IRS. The difference has no impact on the court's decision.

2. The district court's current jurisdiction over cases which were filed under the Bankruptcy Act was granted by the Bankruptcy Amendments and Federal Judgeship Act ("BAFJA"), July 10, 1984, P.L. 98–353, Title I, § 115, 98 Stat.

343 (1984). For an analysis of applicable law, see 28 U.S.C.S. § 1334 at 560–61 (Law.Co-op 1986).

3. Previous congressional hearings had also questioned the statutory basis for taxing a bankruptcy estate, pointing to the difficulty in interpreting the Internal Revenue Code ("IRC") on this issue: "Under present law, the basis for taxing a bankruptcy estate under the IRC is tenuous. Tradition has lumped bankruptcy estates together with decedents' estates under IRC

sions noted the same statutory vacuum. *Norris Bloomfield v. Commissioner*, 52 T.C. 745, 748 (1969) ("The tax status of a trustee in bankruptcy and the allocation of rights and responsibilities between the trustee and the individual bankrupt present a series of knotty problems ... Neither the Internal Revenue Code nor the Federal Bankruptcy Act specifically deals with the tax aspects of a voluntary petition in bankruptcy under chapters I through VII of the Bankruptcy Act, 11 U.S.C. secs. 1–112."), *aff'd* 54 T.C. 554 (1970); *In re 4100 North High Ltd.*, 3 B.R. 232, 238 (Bankr.S.D.Ohio E.D.1980) ("[N]either the Bankruptcy Act nor the Internal Revenue Code as worded in 1975 and 1976 imposed or levied federal income tax upon bankruptcy estates of either individuals or partnerships."); and *In re Samoset Associates*, 14 B.R. 408, 411 n. 5 (Bankr.D.Me.1981) ("The taxability of estates in bankruptcy under section 641 has long remained unclear."). *See also In re Knight's Mill, Inc.*, 24 B.R. 143 (Bankr. E.D.Mich.1982) (recounting the difficulties of various courts in deciding the income tax liability of bankruptcy trustees when liquidating corporations).

As to the issue now before the court, the transferability of prepetition tax attributes to an estate in bankruptcy, the 1980 Tax Act amended the Internal Revenue Code, 26 U.S.C. § 101 *et seq.* ("IRC") to provide that (1) when an individual commences a Chapter 7 or 11 bankruptcy case, a separate taxable entity is created, IRC § 1398(a); but (2) the bankruptcy estate succeeds to certain of the debtor's tax attributes, including NOL carryovers, IRC § 1398(g)(1)–(7). By enacting regulations specifically addressing carryovers, the Tax Act echoed at the federal level the tax treatment that the Bankruptcy Code, in

Section 346(i)(1), had provided for state and local income taxes. *See* 2 Ginsberg, *Bankruptcy* § 16.01 at 1441. Thus, the Tax Act would have resolved the present dispute in favor of the trustee.

Unfortunately, the Tax Act was effective only as to cases filed after December 31, 1980,[4] and the debtors filed their petition for relief in December 1978. The parties have cited no case law directly dealing with the issue.[5] This court, therefore, has the task of determining the transferability of prepetition NOL carryovers to an estate in bankruptcy by applying decisions that deal with similar issues. Two sorts of analogous decisions appear helpful: first, decisions under federal tax law that address the general question of when tax attributes may be transferred between related entities; and second, decisions under the 1898 Bankruptcy Act that address the question of when a trustee may claim intangibles as property of the estate. Both sets of analogies suggest that, consistent with the result under the 1980 Tax Act, the trustee in the present cases is entitled to claim the NOL carryovers.

*Tax decisions.* In the context of corporate mergers and reorganizations, courts have often had to determine whether NOL carryovers could be transferred between related entities. In these cases, a general rule eventually developed that permitted transfer of carryovers to a new or reorganized entity, provided that—regardless of transformations in corporate form—the income sought to be offset was generated by the same business that generated the losses.[6]

This rule developed in spite of an early decision of the United States Supreme

section 641. Any fairminded individual will readily admit that subchapter J of chapter 1 of the IRC was not designed with the bankruptcy estate in mind." H.R.Rep. No. 595, 95th Cong., 2nd Sess. 274, 275 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5787, 6231, 6232.

**4.** 1980 Tax Act § 7.

**5.** Recently, the court in *In re Beery*, 116 B.R. 808 (D.Kan.1990), considered the transferability of prepetition NOL carryovers under the Bankrupt-

cy Act and came to the same conclusion reached here.

**6.** For a historical review of the treatment of NOLs through legislation and case law, see generally Boris I. Bittker & James S. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 16.02 (4th ed. 1979) [hereinafter *Federal Income Taxation*] (the fourth edition treats earlier tax law more fully than the current fifth edition).

Court, *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934), in which the precise form of the reorganization was found decisive on the issue of the transferability of NOL carryovers. In *New Colonial Ice,* a loss corporation's business was taken over by a new corporation which was created for that purpose and which absorbed the prior corporation's assets and liabilities. Although the creditors, capital structure, and business of both corporations were substantially identical, the Court denied the new corporation an opportunity to carry over its predecessor's losses as a deduction against its current income.

Construing Section 204(b) of the Revenue Act of 1921, 42 Stat. 227, 231, which allowed carryovers to a "taxpayer" who incurred a loss, the *New Colonial Ice* Court held that the reorganized corporation was not the "same taxpayer" as the one which sustained the losses, and hence could not claim a loss carryover. The Court rejected the argument that the old and new corporations were the same entity. "[I]n law and in fact the two corporations were not identical but distinct. This was plainly implied in the transfer of the assets and business from one to the other. That transaction was voluntary and contractual, not by operation of law." 292 U.S. at 441, 54 S.Ct. at 791. This decision effectively restricted use of NOL carryovers to the *same legal entity* which incurred the loss, and corporate reorganizations made after the *New Colonial Ice* decision were planned to ensure that the loss corporation would emerge as the surviving corporation. *Federal Income Taxation* ¶ 16.02.

Plainly, the rule of *New Colonial Ice,* if applicable to the present situation, would disallow the NOL carryovers sought by the trustee, since (as the IRS argues) the estates in bankruptcy are not entities identical to the debtors who generated the NOLs. However, there are two reasons why the rule of *New Colonial Ice* should not be applied here. First, the transfer of the partnership interest of the debtors to their estates in bankruptcy was not a voluntary choice of the debtors, but a legal consequence of bankruptcy, which itself may be involuntarily imposed. More importantly, the strict rule of *New Colonial Ice* has not been applied in subsequent cases.

A second Supreme Court tax case, *Libson Shops v. Koehler,* 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957), suggests the appropriate rule of law. In that decision, instead of scrutinizing the legal form of a corporate reorganization, the Court looked to its substance. In *Libson Shops,* the Court was presented with a new corporation formed from the merger of sixteen corporations operating retail stores and a management corporation. The sixteen sales corporations had previously filed their own individual tax returns rather than pooling their income and losses by filing a consolidated return. The new corporation was attempting to carry over pre-merger losses of three of the sales corporations that continued to have losses after the merger. Had there been no merger, those three units would have had no income against which to offset their prior losses.

*Libson Shops* did not involve a merger in which a loss corporation was the survivor, and so a simple application of *New Colonial Ice* would have resulted in a denial of the loss carryovers. The IRS urged such an application. The Court, however, applied a different test. It considered whether there was a "continuity of business enterprise" from the old to the new entities, 353 U.S. at 386, 77 S.Ct. at 993, found none, and, on that basis only, denied the NOL carryovers to the new corporation. "[P]etitioner is not entitled to a carry-over since the income against which the offset is claimed was not produced by substantially the same businesses which incurred the losses." 353 U.S. at 390, 77 S.Ct. at 994. In establishing this test, the Court read the applicable legislative history (that of the 1939 IRC, as amended) as suggesting that carryovers and carrybacks should not permit the averaging of the pre-merger losses of one business with the post-merger income of some other business that had been operated and taxed separately before the merger. Rather, congressional concern was with "the fluctuating income of a sin-

gle business." 353 U.S. at 387, 77 S.Ct. at 993.

■ The First Circuit Court of Appeals, in *F.C. Donovan, Inc. v. United States,* 261 F.2d 470 (1st Cir.1958), used a similar continuity of business test to *allow* a transfer of tax attributes where a corporate reorganization resulted in no change of business, even though there was a change in legal entities. Citing an earlier decision, *Newmarket Manufacturing Co. v. United States,* 233 F.2d 493 (1st Cir.), *cert. denied* 353 U.S. 983, 77 S.Ct. 1279, 1 L.Ed.2d 1142 (1957), the First Circuit emphasized that "taxation is an intensely practical matter, which ought to turn upon economic realities rather than upon technical differences...." 261 F.2d at 471, *citing* 233 F.2d at 498. In dealing with the loss carry-back provisions of the Internal Revenue Code of 1939, the *Donovan* Court reasoned: "[I]t would seem a sterile technicality, and wholly unrealistic, to impute to the Congress an intention ... to make the loss carry-back dependent upon the mere form in which the reorganization is cast...." 261 F.2d at 475.[7] The doctrine emerging from *Libson Shops* and *Donovan* is that continuity of business activity rather than continuity of corporate structure is dispositive. *Accord Wisconsin Central R.R. Co. v. United States,* 296 F.2d 750 (Ct.Cl.1961) (commenting on *Donovan's* recognition that in certain corporate reorganizations there is no realistic economic change, 296 F.2d at 755), *cert. denied* 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962)).

Finally, in the Internal Revenue Code of 1954, 68A Stat. 3, at IRC §§ 381, 382, Congress itself established comprehensive rules to preserve tax attributes "based upon economic realities rather than upon such artificialities as the legal form of the reorganization." S.Rep. No. 1622, 83d Cong., 2d Sess., 52 (1954), *reprinted in* 1954 U.S.Code Cong. & Admin.News, 4621, 4683. Section 381 generally provided that certain enumerated tax attributes may pass: (1) from one corporation to another when the transaction constitutes a certain type of tax-free reorganization or liquidation; or (2) in acquisitive transactions, when one corporation absorbs the stock or assets of another. *Federal Income Taxation* ¶¶ 16.03, 16.10. It cannot be said that this tax scheme allows NOL carryovers to be claimed only by the legal entity that generated the loss, as the *New Colonial Ice* Court said of the 1921 Revenue Act. *Federal Income Taxation* ¶ 16.26 n. 217 ("[T]he 1954 Code provision of § 381 ... clearly rejects the *New Colonial Ice* doctrine."). *See Koppers Co., Inc. v. United States,* 134 F.Supp. 290, 296 (Ct.Cl.1955), *cert. denied* 353 U.S. 983, 77 S.Ct. 1279, 1 L.Ed.2d 1142 (1957) ("The legislative policy and statutory scheme since the 1921 Revenue Act reflects a more liberal and realistic approach to problems arising from corporate reorganizations. The language of the carry-back and carry-over provisions have been broadened and the years available for leveling out the fluctuations in earnings have been extended.").[8]

---

**7.** The *Donovan* Court distinguished *New Colonial Ice* on the basis that it was decided under an obsolete statutory scheme.

> We now think that the true explanation of *New Colonial Ice Co., Inc., v. Helvering* is that it came up under the provisions of the Revenue Act of 1921, which was several years before the Congress introduced into the revenue laws the broad provisions for certain types of reorganizations to be tax-free as to the corporations. It was the obvious and stated purpose of the Congress to encourage businessmen to effectuate certain types of tax-free reorganizations for adequate business reasons, unaffected by a fear of adverse federal tax consequences. See Comment (2) to 203 of the Revenue Act of 1924 in H.R.Rep. No. 179, 68th Cong., 1st Sess.

*Donovan,* 261 F.2d at 476.

**8.** The IRS' reliance on *Patten Fine Papers v. Commissioner,* 249 F.2d 776 (7th Cir.1957), is similarly questionable since that case was also decided on pre–1954 tax law, and relied on *New Colonial Ice.* 249 F.2d at 780. *Patten* can be further distinguished on its facts. The case concerned a personal holding company attempting to use the capital loss carryover of a liquidated subsidiary where there was no continuity of business between the two corporations.

The IRS' reliance on authorities such as Revenue Rulings and a General Counsel Memorandum must also be discounted, since they reflect the partisan stance of the Commissioner of Internal Revenue. *Helvering v. New York Trust Co., Trustee,* 292 U.S. 455, 467–68, 54 S.Ct. 806, 810, 78 L.Ed. 1361 (1934).

■ Given the changes in both decisional and statutory law since *New Colonial Ice* was decided, the continuity of business test, rather than the "legal entity" test proposed by the IRS, should be applied to the present case. Application of the test allows the carryovers claimed by the trustee, who simply took over the debtors' business—the same real estate activities which produced profits and losses for the debtors were carried over to their bankruptcy estates.

■ Bankruptcy Considerations. The second area of analysis—cases concerning the extent of a bankruptcy estate under the 1898 Bankruptcy Act—similarly indicates that the trustee is entitled to the NOL carryovers involved here. Section 70a(5) of the Act provided that the estate includes "rights of action which prior to the filing of the petition ... [the debtor] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered...."

In *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the Supreme Court interpreted Section 70a(5) to hold that business-generated loss carryback tax refund claims were transferable to the trustee and thus property of the bankruptcy estate. In reaching this decision, the Supreme Court first noted that the meaning of "property" as that term is used in Section 70a(5) should be decided by looking to the purposes of the Bankruptcy Act. 382 U.S. at 379, 86 S.Ct. at 515. The *Segal* Court commented: "The main thrust of § 70a(5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Id.* The main

limitation on the definition of "property" noted by the Court is that the debtor must be allowed sufficient resources, after bankruptcy, "to accumulate new wealth in the future."[9] However, the loss carryback refund claim at issue in the *Segal* case was "sufficiently rooted in the pre-bankruptcy past and so little entangled with the Debtors' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5)." 382 U.S. at 379–80, 86 S.Ct. at 515.

Under this reasoning, the carryovers claimed in the present case would likewise appear to be "property," since they are things of value entirely rooted in the debtors' pre-bankruptcy real estate investment activities. However, the Court in *Segal* specifically distinguished loss carryovers from the carrybacks with which its opinion dealt, since, at the time of bankruptcy filing, there is no certainty that any income will be earned by the estate so as to allow use of a prior NOL. "[T]he supposed loss-carryover would still need to be matched in some future year by earnings, earnings that might never eventuate at all." 382 U.S. at 381, 86 S.Ct. at 516. On this basis, the Court expressly declined to rule on the question of whether carryovers are estate property. *Id.*

However, the concerns raised by the *Segal* Court do not prevent a finding that the NOLs involved in this case can give rise to a carryover that is estate property. While the Court in *Segal* noted the inconvenience (and perhaps futility) of keeping an estate open to await speculative earnings, in the present case Luster's and Friedman's estates incurred specific post-petition income which could be offset by specific loss carrybacks. Further, as the Court itself noted, "contingency in the abstract is no bar" to inclusion of an intangible as estate proper-

**9.** The *Segal* Court also dealt briefly with § 70a(5)'s requirement that the property be alienable, and citing *Martin v. National Surety Co.*, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937), concluded that an assignment of the claims at issue would be enforced in a state court of equity in the normal case. *Segal*, 382 U.S. at 384, 86 S.Ct. at 517. *See Board of Education, Tazewell County, Illinois v. Collom*, 77 Ill.App.2d 479, 222 N.E.2d 804, 807 (1966) ("such Federal authorities [are] not inconsistent with our views," *citing Martin* ). The IRS has not suggested that this analysis would not also be applicable to loss carryovers.

ty. 382 U.S. at 380, 86 S.Ct. at 380.[10]

Under the facts of this case, there is no realistic difference between allowing the bankruptcy trustee to carry back losses to pre-petition tax years for the benefit of the estate and allowing the bankruptcy trustee to benefit from pre-petition loss carryovers from the debtors' pre-petition tax years. Thus, bankruptcy law provides a separate basis for holding that the debtors' pre-petition NOLs carryovers are property of their bankruptcy estates, offsetting the estates' post-petition income. This result is consistent with congressional intent: "From an historical perspective, Congress has taken great care to insure that tax policy will not frustrate the operation of bankruptcy...." H.R.Rep. No. 595, 95th Cong., 2nd Sess. 274, 275 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5787, 6231, 6232.

Time Limitation on Use of Loss Carryovers.

Friedman's 1980 NOL cannot completely offset his estate's taxable income because of a statutory time limitation on the use of NOL carryovers. For 1980 tax returns, IRC § 172(b)(1)(B) specifies that an NOL may not be offset against income more than five years after the taxpayer accrues the loss. Thus, while Friedman's $286,039 loss carryforward for 1976 will offset the majority of his estate's $315,818 taxable income, there still remains $29,779 in 1980 estate income subject to tax. Luster's 1975 and 1976 loss carryovers of $518,737 completely offset his estate's $315,818 taxable income for 1980.

Priority of Payment for Post–Petition Tax Liability.

■ Payment of the Friedman estate's 1980 tax liability should be accorded a first priority. Although the trustee has presented a creative argument to the contrary, the court adheres to the clear intent in § 64a(1) of the Bankruptcy Act, which provides that first priority be given to paying the "costs and expenses of administration, including

the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition." Taxes arising post-petition were generally considered administrative expenses under this provision. "To the extent to which a receiver or trustee is under a duty to pay taxes, his expenses or tax liabilities are to be classified as necessary costs of operation, preservation or administration, and within the first priority. [footnote omitted]." *Collier on Bankruptcy* ¶ 64.12 (14th ed. 1961). In its discussion of the first and fourth administrative priorities in tax payments, *Collier* distinguishes whether the taxes arose pre- or post-petition: "The priority accorded under § 64a(4) obviously relates to those taxes which became legally due and owing *prior* to bankruptcy. [footnote omitted] Taxes accruing after bankruptcy are a cost of administration and entitled to a first priority." *Id.* at ¶ 64.401[1]. There is no good basis for departing from this rule in the present case.

Conclusion

Consistent with the foregoing discussion, the court finds on independent tax and bankruptcy grounds that the pre-petition NOL carryovers to which Luster and Friedman were entitled became property of their bankruptcy estates. As such, timely NOL carryovers may be transferred to the estates to offset post-petition income. 1980 taxes owed by the Friedman estate receive first priority in payment as an expense of administration. A separate order will be issued consistent with this opinion.

ORDER

No. 78 B 9574

This cause coming on for hearing on the trustee's motion for summary judgment, and the court having heard the arguments of the parties and considered the exhibits and memoranda filed by counsel for the parties,

"[I]nterests whose value is speculative and interests that involve intangible rights that are subject to regulation may be included as property of the estate."

---

**10.** In a Code case decided after the 1980 Tax Act, the Court in *In re Prudential Lines,* 928 F.2d 565, 572 (9th Cir.), *cert. denied* —— U.S. ——, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991) considered this same issue in the *Segal* context, and concluded:

IT IS HEREBY ORDERED, for the reasons stated in the accompanying Memorandum of Decision, that the trustee's motion is granted, with the pre-petition net operating loss carryovers to which the Debtor was entitled becoming part of his bankruptcy estate.

## ORDER

### No. 78 B 9575

This cause coming on for hearing on the trustee's motion for summary judgment, and the court having heard the arguments of the parties and considered the exhibits and memoranda filed by counsel for the parties,

IT IS HEREBY ORDERED, for the reasons stated in the accompanying Memorandum of Decision, that the trustee's motion is granted, with the pre-petition net operating loss carryovers to which the Debtor was entitled becoming part of his bankruptcy estate. For the portion of the Debtor's 1980 estate income which is not offset by pre-petition net operating losses, payment of the ensuing tax liability is accorded a first priority in payment as an expense of administration.