**UNITED STATES of America, for the use of the INTERNAL REVENUE SERVICE, Appellant–Cross Appellee,**

v.

**Dennis E. QUAID, not individually, but as Trustee for the Estate of Harold E. Friedman, Appellee–Cross Appellant.**

**In re Harold E. FRIEDMAN, Bankrupt.**

**Nos. 92 C 226, 78 B 9575.**

United States District Court,
N.D. Illinois, E.D.

April 7, 1992.

928 F.2d 565 (2nd Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991).

Joel Nathan, Asst. U.S. Atty., N.D.Ill., Benjamin R. Norris, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

Dennis E. Quaid, trustee.

Michael J. Keaton, Fagel & Haber, Chicago, Ill., for appellee-cross-appellant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Both the United States and Trustee Dennis Quaid ("Trustee") for the bankruptcy estate (the "Estate") of Harold Friedman ("Friedman") have appealed from the decision of Bankruptcy Judge Eugene Wedoff reported as *In re Luster*, 134 B.R. 632 (Bankr.N.D.Ill.1991).[1] For the reasons stated in this memorandum opinion and order, the United States prevails on both appeals.

### Facts and Issues Presented

Because Judge Wedoff's opinion in *Luster*, and the just-issued opinion by this Court's colleague Honorable Charles P. Kocoras reversing Bankruptcy Judge Wedoff as to Luster's estate (*In re Luster*, 138 B.R. 875 (N.D.Ill.1992)), recite the facts that are applicable to this case as well as to Luster's, this opinion will not repeat those facts in detail. Suffice it to say that Friedman (like Luster) owned a 22% limited partnership interest in a real estate partnership known as Sheridan Ardmore Properties, that the post-bankruptcy sale of that partnership's real estate and the termination of the partnership itself in 1980 generated an aggregate of nearly $750,000 in long-term capital gains for Friedman (as for Luster), and that the two issues on appeal are these:

1. whether the Estate can avail itself of Friedman's pre-bankruptcy net operat-

---

1. As Bankruptcy Judge Wedoff's opinion reflects, Friedman and Melvin Luster ("Luster") had filed contemporaneous bankruptcy petitions under the old Bankruptcy Act of 1898 (the "Act") on December 6, 1978. Because their bankruptcy estates had identical property interests whose post-filing disposition created largely (though not entirely) identical legal problems, Judge Wedoff dealt with the issues in both cases in a single opinion.

ing loss ("NOL") carryover to reduce its own federal income taxes (Bankruptcy Judge Wedoff answered that question "Yes") and

2. whether the United States' claim for the income taxes attributable to the post-bankruptcy-filing events are entitled to first priority as costs and expenses of administration under Act § 64(a)(1) (Bankruptcy Judge Wedoff also answered that question "Yes").

### NOL Carryover

■ This Court had frankly looked forward to dealing with the NOL carryforward issue, because it would have involved a return to such familiar territory. As a lawyer in private practice, this Court had major involvement in the tax and business planning for both corporate and individual clients, including a substantial practice in all aspects of major real estate investment transactions. Consequently the area of NOLs (both carryover and carryback), including both the antecedents and later the statutory descendants of the doctrine of *Libson Shops v. Koehler*, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957), are in the category of very old acquaintances indeed.

But the anticipated pleasure of revisiting that entire field of law and of dealing with the concepts involved (some of them a bit arcane) has just now been outweighed by the pleasure of receiving and reviewing Judge Kocoras's opinion in *Luster*. That opinion is impeccable in its analysis, and this Court joins it wholeheartedly. Bankruptcy Judge Wedoff's decision finding that Friedman's pre-petition NOL carryovers (well over $1.5 million in the aggregate) are property of the Estate must be and is reversed for the selfsame reasons that Judge Kocoras has so well articulated as to Luster's estate.

### Income Taxes as "Costs and Expenses of Administration"

■ Inexplicably Trustee purported to appeal in the *Luster* case from Bankruptcy Judge Wedoff's holding that the post-petition income taxes on *Friedman*'s Estate were entitled to a first priority under Act § 64(a)(1) (134 B.R. at 639). Quite under-standably Judge Kocoras declined that inappropriate invitation (138 B.R. at 876–77), but the issue is properly before this Court.

Trustee seems to perceive himself as long on equity (his Mem. 4):

> As will be demonstrated hereinafter, the IRS cannot have it both ways. Either the estate inherited both the gain and the Carryovers and may use the Carryovers to offset the gain, or both the gain and the Carryovers remained outside of the bankruptcy estate.

But Trustee has utterly failed to "demonstrate[ ] hereinafter"—his problem is that he comes up very short on the law.

■ Act § 64(a)(1) accorded first priority to the "costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition." Because a bankruptcy estate is a taxable entity quite separate and apart from the bankrupt himself or itself (a concept that was also relevant to resolution of the NOL carryover issue), it is surely a fair characterization of the Estate's income taxes as "necessary costs and expenses" incurred in enhancing the Estate by its post-petition taxable gains.

■ Nor is it necessary for a bankruptcy estate to be engaged in the operation of a business for that analysis to apply. As stated in *Collier on Bankruptcy* ¶ 62.14, at 1521–22 (14th ed. 1975) (before the Act was entirely superseded by the Bankruptcy Reform Act of 1978, now operative as the Bankruptcy Code):

> As to the taxable income to be reported by a receiver or trustee in ordinary bankruptcy liquidation, it is, in the absence of any special rule, governed by the general provisions of the Revenue Acts. This is clearly so where operation of a business is continued. But it should be no less true where in a protracted liquidation a receiver or trustee realizes income from bank deposits, sale of capital assets, recovery on a written-off claim, etc. Treating the receiver or trustee, as the law seems to require, on a footing of equality with other taxpayers, the only general objection to his liability for tax on income that might conceivably result to the es-

tate during bankruptcy proceedings would be the fact that the estate may and ordinarily will be insolvent after receiving the income as it was prior thereto. Aside from the fact that this reasoning would at least earmark for taxation those cases, however unusual, in which the estate emerges solvent from the proceeding, it implies a limitation on the taxing power that may appeal to emotion, but has little justification in law. The fact that the estate remains insolvent notwithstanding the receipt of a certain income, *e.g.*, from interest on deposits, or sale of a capital asset, cuts no figure in this connection.... The tax on the income should be paid by the fiduciary officer and allowed as an expense of administration under § 64(a)(1), and not as a claim against the estate under § 64(a)(4).

■ Given that home truth, Trustee's attempted reliance on *In re Jartran, Inc.*, 732 F.2d 584, 586–87 (7th Cir.1984) fails, for the United States clearly meets the *Jartran* standard. That case, speaking in the context of a bankruptcy estate operating a business as debtor in possession, said (*id.*):

Recognizing the need for careful criteria in granting priority, the court in *Mammoth Mart* established a two part test for determining whether a debt should be afforded administrative priority. Under these criteria a claim will be afforded priority under § 503 if the debt both (1) "arise[s] from a transaction with the debtor-in-possession" and (2) is "beneficial to the debtor-in-possession in the operation of the business." *In re Mammoth Mart, Inc.*, 536 F.2d [950,] 954 [ (1st Cir.1976) ].

■ Some modification is obviously required to apply that language to the quite different situation of Friedman's Estate. As for the first part of the test (recast slightly to fit the current context), the Estate's sharing in the real estate partnership's income, as well as its derivation of the proceeds of sale of the partnership real estate via that sale and the termination of the partnership, must be viewed as transactions with the debtor Estate (and surely

*not* with Friedman himself). And as for the second part of the test, there is equally no question that all of those things were beneficial to the Estate.

Finally, Trustee's attempted reliance on *Otte v. United States*, 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974) is equally empty. *Otte* disallowed a first priority claim for withholding taxes on wages that had been earned *before* the filing of the bankruptcy petition. Those wages were themselves concededly accorded a second priority status (419 U.S. at 45, 95 S.Ct. at 250). In the Court's unanimous view that led inexorably to an identical priority for the inextricably-linked withholding taxes on those wages (*id.* at 57, 95 S.Ct. at 256):

They [the withholding taxes] are attributable in their entirety to the availability of funds for the payment of priority wage claims. They accrue only as those claims are paid and, to the extent of that payment, the payment of the taxes should be assured. In addition, it is anomalous to accord withholding taxes a higher priority than the wage claims to which they so directly relate. They can be computed only upon the amount of funds available for payment of the wage claims and should not have a computational base greater than those payments. The withholding taxes are, in full effect, part of the claims themselves and derive from and are carved out of the payment of those claims. We therefore fully agree with the Second Circuit's observation, [*In re Freedomland, Inc.*] 480 F.2d [184], at 190 [ (2d Cir.1973) ]: "Conceptually the tax payments should be treated in the same way as the wages from which they derive and of which they are a part."

By total contrast, the income taxes at issue here were wholly attributable to transactions that took place *after* Friedman had filed his petition—transactions whose economic benefit flowed directly to the Estate. Again the conclusion is compelling that, unlike the situation in *Otte*, the taxes here mesh with the Act § 64(a)(1) definition.

*Conclusion*

For the reasons well stated by Judge Kocoras in the *Luster* case, Bankruptcy Judge Wedoff's decision holding that Friedman's NOL carryover was property of the

Estate is reversed. And for the reasons stated in this opinion, Bankruptcy Judge Wedoff's decision allowing the federal income taxes payable by the Estate as a first priority claim in bankruptcy under Act § 64(a)(1) is affirmed.