EASTERBROOK, Circuit Judge.
 

 This case of first and last impression presents the question whether net operating loss carryforwards are “property” of the debtor’s estate under the Bankruptcy Act of 1898, a statute repealed 14 years ago. Section 346(i)(l) of the Bankruptcy Code of 1978, 11 U.S.C. § 346(i)(1), provides that the estate succeeds to all tax attributes of the debtor. See also 26 U.S.C. § 1398(g). Nothing similar to § 346(i)(l) appeared in the 1898 Act. Melvin Luster and Harold Friedman filed petitions before the 1898 Act expired on September 30, 1979. That statute governs the disposition of their cases and a dwindling number of others.
 

 Luster and Friedman incurred losses in their real estate business before filing petitions in bankruptcy. During the bankruptcies, both estates realized gains on the sale of property. The trustee sought to avoid federal taxation by offsetting these gains against the losses the debtors accrued before entering bankruptcy. If the estates can use the loss carryovers, then there will be substantial dividends for ordinary creditors; if the loss carryovers are not “property” of the estates, then the tax on the gains will eat up the profits, and only the Internal Revenue Service (plus other claimants entitled to administrative priority) will see any money.
 

 Section 70(a)(5) of the 1898 Act, 11 U.S.C. § 110(a)(5) (1976 ed.), provided that the estate in bankruptcy acquired all of the debt- or’s “property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered”. Bankruptcy Judge Wedoff held that net operating loss carryforwards are “property” and satisfy the transferability condition.
 
 In re Luster,
 
 134 B.R. 632 (Bankr.N.D.Ill.1991). Although he recognized that
 
 New Colonial Ice Co. v. Helvering,
 
 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934), holds that a corporate taxpayer may not transfer an operating loss car-ryforward, the judge concluded that operating losses may be transferred to successors conducting the same business. A negative implication of
 
 Libson Shops, Inc. v. Koehler,
 
 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957), has led some courts to conclude that
 
 New Colonial Ice
 
 is outdated.
 
 Libson Shops
 
 held that the surviving corporation in a merger does not inherit the tax attributes of its predecessors when the reorganization would permit netting of the loss from one predecessor’s business with gains produced by the other. By employing this “continuity of business enterprise” approach, the bankruptcy judge concluded, the Court implicitly authorized transfers of loss attributes among related entities such as a debtor and the trustee of his estate in bankruptcy. “The doctrine emerging from
 
 Libson Shops
 
 and
 
 Donovan[ Inc. v. United States,
 
 261 F.2d 470 (1st Cir.1958)] is that continuity of business activity rather than continuity of corporate structure is dispositive.” 134 B.R. at 637.
 

 The United States (as tax collector, the estates’ largest creditor) appealed from this decision. Luster’s case was assigned to Judge Kocoras, Friedman’s to Judge Sha-dur. Judge Kocoras acted first, holding that loss carryforwards are not alienable and therefore do not enter the estate in bankruptcy.
 
 In re Luster,
 
 138 B.R. 875 (N.D.Ill.1992). Citing
 
 National Tea Co. v. CIR,
 
 793 F.2d 864, 872 (7th Cir.1986), Judge Kocoras doubted that the approach of
 
 Libson Shops
 
 (which dealt with an ambiguity in § 122' of the Internal Revenue Code of 1939) applies to cases under the Internal Revenue Code of 1954, given the extensive amendments Congress made that year specifying the circumstances under which one corporation may take advantage of another’s losses. Sections 381 and 382 of the Internal Revenue Code, 26 U.S.C. §§ 381, 382, permit corporations to transfer tax shields in some but far from all circumstances, and these statutes set caps on the amount of losses that corporations may use. Nothing in the 1954 Code permits
 
 *279
 
 natural persons to sell or give away losses; for them,
 
 New Colonial Ice
 
 remains in force. They depend on the 1978 Bankruptcy Code, which took effect too late to do the creditors to the Luster and Friedman estates any good. Having concluded that a natural person’s operating loss carryfor-ward is not transferable outside of bankruptcy, Judge Kocoras reversed the bankruptcy court's decision. Five days later, Judge Shadur filed an opinion agreeing with this conclusion and adding that the tax claims have administrative priority.
 
 In re Friedman,
 
 138 B.R.
 
 881
 
 (N.D.Ill.1992). These are “final” decisions, appealable under 28 U.S.C. § 158(d), because they conclusively establish the amount and priority of the estates’ debts to the United States.
 
 In re Morse Electric Co.,
 
 805 F.2d 262, 264 (7th Cir.1986).
 

 We may assume that the tax benefits of pre-bankruptcy losses are “property.” An estate in bankruptcy under the 1898 Act obtained only so much of the debtor’s “property” as the debtor “could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered”. In the main, this qualification excluded from the estate assets that state law protected against sale or transfer (such as marital property, pensions, and the future income of spendthrift trusts). Federal rather than state law governs transferability of federal tax benefits. And
 
 New Colonial Ice
 
 holds that only the entity that incurred the losses may offset them against future profits; even the immediate corporate successor to an ongoing business starts from scratch on the tax ledgers. Whatever may be the case for mergers— corporate law characterizes the survivor as a continuation of the original firms rather than a transfer of assets and claims, see
 
 United States Shoe Corp. v. Hackett,
 
 793 F.2d 161 (7th Cir.1986) — an avowed sale or gift of a tax benefit is impossible under the Internal Revenue Code.
 

 A trustee in bankruptcy represents the interests of creditors. He marshals the debtor’s assets, distributing them to creditors according to their contractual and statutory priorities. Natural persons such as Luster and Friedman transfer all of their non-exempt assets to the trustee as of the date of the petition in bankruptcy. The estate thus funded (perhaps augmented by preference recoveries and other uses of the trustee’s avoiding powers) assumes a life separate from the debtor, who receives a discharge and resumes his life. Once again conducting business, a debtor may have good use for the tax shields that preceded bankruptcy. Trustees and debtors thus are competitors for the tax benefits in existence on the date of the petition.
 

 Could Luster, unable to pay his debts as they came due in 1977 (before he filed his petition in bankruptcy), have transferred his operating loss carryforwards to his creditors in satisfaction of his debt? Certainly not, as the Trustee conceded at oral argument. Could a creditor holding a judgment against Luster have seized and used his loss carryforwards in satisfaction? Again not, and again the Trustee so conceded. Once the bankruptcy commences, the trustee acts as representative of these same creditors who, outside of bankruptcy, could not look to the loss attributes as a store of value.
 

 The Trustee contends that “bankruptcy policy” trumps these rules. Bankruptcy policy is not necessarily dominant. The tax collector may care deeply about who can use a loss: persons who have led loss-filled lives (landing in bankruptcy) are less likely to have gains in the immediate future — and thus are less likely to be able to use the accumulated losses — than are potential transferees. Permitting losses in one year to reduce taxes on income in future years entails a greater cost in tax revenues if the person who incurred the losses can sell or assign them, for then matching of gains to losses is all but certain; an anti-assignment rule means that many losses never yield tax benefits. When deciding how long losses may be carried before they expire, the ratio of matching between losses and future profits, and the kind of future gains that may be reduced on account of losses in former years, a legislature necessarily considers the probability that they will not be
 
 *280
 
 used at all. The revenue effect of loss carryforwards rises with their life, with their matching ratio, with the types of profits to which they may be applied, and with their transferability. Adjustments such as the one made in the 1978 Bankruptcy Code are costly to the Treasury and are apt to be hedged about, perhaps by reducing the number of years the losses may be carried forward. Treating losses as property of an estate in bankruptcy without express statutory authority would enlarge the tax expenditure involved without the opportunity for an offsetting adjustment.
 

 At all events, it is hard to isolate a “bankruptcy policy” distinct from the terms of the 1898 Act and 1978 Code. “Bankruptcy policy” does not exist in the abstract; the term is a shorthand for rules and the implications they create. When construing ambiguities in bankruptcy statutes, courts consider goals that infuse the structure of the laws — goals such as preventing a race among creditors that reduces the total value of the estate, distributing assets according to contractual and statutory entitlements, and providing natural persons with “fresh starts” so that they again can claim the rewards of their labor. E.g.,
 
 Butner v. United States,
 
 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979);
 
 Covey v. Commercial National Bank of Peoria,
 
 960 F.2d 657, 661-62 (7th Cir.1992); Douglas G. Baird,
 
 The Elements of Bankruptcy
 
 24-54 (1992); Thomas H. Jackson,
 
 The Fresh-Start Policy in Bankruptcy Law,
 
 98 Harv.L.Rev. 1393 (1985). The first of these goals, preventing premature dismemberment of a debtor, has nothing to do with the use of tax losses. The second, implementing non-bankruptcy entitlements, see
 
 Butner,
 
 militates against treating losses as part of the estate — for, as we have seen, these are not alienable outside of bankruptcy. And the third, providing a fresh start for debtors, is either neutral or implies that the debtors should retain their tax attributes (which by reducing the effective tax rate on future income promotes debtors’ success). It may
 
 also
 
 promote too-ready resort to bankruptcy, in order to shuck debts while retaining tax advantages. The change made in 1978 alters this incentive without implying that an unexpressed “bankruptcy policy” concealed beneath the surface of the 1898 Act had the same effect.
 

 Whether an asset is transferable for purposes of § 70(a)(5) of the 1898 Act must be determined by whether a “voluntary transfer ... could have been made prior to bankruptcy”.
 
 Segal v. Rochelle,
 
 382 U.S. 375, 384, 86 S.Ct. 511, 517, 15 L.Ed.2d 428 (1966). Section 70(a)(5) itself requires courts to examine matters as they stood “prior to the filing of the petition”. That pretty much excludes all possibility that assets inalienable outside of bankruptcy pass to the estate on the authority of a nebulous “bankruptcy policy” — for that would be the sort of transfer-by-operation-of-law that the Court disparaged in
 
 Segal.
 
 382 U.S. at 382-83, 86 S.Ct. at 516-17.
 

 Nonetheless, the Trustee makes
 
 Segal
 
 the centerpiece of his argument. It is easy to see why.
 
 Segal
 
 held that an estate in bankruptcy is entitled to use the loss carry-backs of the debtor. If the estate can apply current losses to prior profits, why not prior losses to current profits?
 
 Segal
 
 reserved the question, 382 U.S. at 381, 86 S.Ct. at 515-16, and its answer lies in § 70(a)(5). A loss carryback produces a current refund; a person who has paid taxes in fat years receives some of them back in lean years. Both an existing refund and a right to receive one may be assigned freely outside of bankruptcy; the Court relied on this to hold that the conditions of § 70(a)(5) had been satisfied. 382 U.S. at 384-85, 86 S.Ct. at 517-18. No surprise here. Loss carrybacks are useful only when the taxpayer has realized profits in prior years. Transfer of the resulting benefit poses none of the prospects of arbitrage that we have discussed. Nothing in
 
 Segal
 
 implies that loss carryforwards are alienable; the Court did not question
 
 New Colonial Ice
 
 and had no need even to cite that case.
 

 One remaining question. Are taxes on gains realized on sales of property during the administration of the estate “costs and expenses of administration” for pur
 
 *281
 
 poses of the 1898 Act? Judge Shadur concluded that they are, 138 B.R. at 883-84. That well-reasoned conclusion requires no elaboration here. Cf.
 
 Holywell Corp. v. Smith,
 
 — U.S. -, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992).
 

 AFFIRMED.