**In re Melvin R. LUSTER, Debtor.**

**UNITED STATES of America, for the use of the INTERNAL REVENUE SERVICE, Appellant–Cross Appellee,**

**v.**

**Dennis E. QUAID, not individually, but as Trustee for the Estate of Melvin R. Luster, Appellee–Cross Appellant.**

**Bankruptcy Nos. 92 C 225, 78 B 9574.**

United States District Court,
N.D. Illinois, E.D.

April 2, 1992.

Joel Nathan, Asst. U.S. Atty., N.D.Ill., Benjamin R. Norris, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

Dennis E. Quaid, trustee.

Michael J. Keaton, Fagel & Haber, Chicago, Ill. 60603, for appellee-cross appellant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This is an appeal by the Internal Revenue Service from a decision of the Bankruptcy Court for the Northern District of Illinois to grant the trustee's motion for summary judgment. The trustee has filed a cross-appeal. For the reasons set forth below, we will only entertain the Internal Revenue Service's appeal. In doing so, we reverse the bankruptcy court's decision.

## BACKGROUND

On December 6, 1978, Melvin Luster ("Luster") and Harold Friedman ("Friedman") filed individual petitions for relief under the Bankruptcy Act of 1898 (the "Bankruptcy Act"). Subsequently, a trustee on behalf of these debtors filed a summary judgment motion against the Internal Revenue Service ("IRS"). Since both motions presented the identical legal issue, the bankruptcy court consolidated the two cases. After considering the parties' arguments, the bankruptcy court issued two holdings in a reported opinion. *See In re Luster*, 134 B.R. 632 (Bkrtcy.N.D.Ill.1991). First, the court held that the debtors' prepetition net operating loss ("NOL") carryovers were transferable to their respective estates under the Bankruptcy Act. *Id.* at 638–39. The IRS appeals from this holding. Second, the court held that certain taxes owed by Friedman's estate were entitled to a first priority. *Id.* at 639. The trustee purportedly cross-appeals from this holding.

The following facts are undisputed. On December 6, 1978, Luster and Friedman both filed individual petitions for relief under the Bankruptcy Act. Luster owned a 22% interest in Sheridan Ardmore Properties ("SA Properties") as a limited partner. Friedman likewise retained a substantial interest in SA Properties. The partnership owned and operated rental property at 5801 North Sheridan Road, Chicago, Illinois. Both of the debtors' partnership interests constituted a major asset in their respective bankruptcy estates.

In 1980, prior to discharge, SA Properties' assets were sold and the partnership terminated. At no time did the partnership file for bankruptcy. As a result of the termination, Luster's estate obtained considerable income. Accordingly, the trustee filed a 1980 fiduciary tax return for Luster's estate. The return reported a tax liability of $203,735. It further indicated the following items of gross income: (1) $23,973 in rental income; (2) a $346,937 long term capital gain on the sale of the partnership's property; (3) a $388,425 long term capital gain on termination of the partnership; and (4) $3,425 in interest income. In computing the estate's tax liability, the trustee applied a $5,454 loss carryover that accrued in 1979 after Luster's filing. After computing both estates' 1980 tax liability, the trustee filed claims on behalf of the IRS.

Subsequently, however, the trustee amended the 1980 fiduciary returns. In doing so, the trustee incorporated previously undiscovered and unused prepetition

NOLs. With respect to Luster, these NOLs totaled approximately $1,500,000. This amendment eliminated Luster's estate's previously calculated 1980 tax liability. The amendment of Friedman's estate's return merely reduced the estate's 1980 tax liability. The IRS disputed the propriety of the trustee's amendments, claiming that the prepetition NOLs were not available to the estates. The trustee disagreed and filed two summary judgment motions to resolve the dispute.

Because the two motions presented the identical issue, the bankruptcy court consolidated the cases. The bankruptcy court rendered two holdings. First, the court held that the debtors' prepetition NOL carryovers were properly transferable to their estates under the Bankruptcy Act. *Id.* at 638–39. The IRS appeals from this holding. The court's second holding was that "[p]ayment of the Friedman estate's 1980 tax liability should be accorded a first priority." *Id.* at 639. The trustee purportedly cross-appeals from this holding.

■ We will only address the issue raised in the IRS' appeal. The court's second holding is not properly before this Court. Because Luster's estate had no 1980 tax liability, the court's second holding was limited exclusively to Friedman. *Id.* at 634 & 639. Moreover, Friedman is not a party to this suit nor has the trustee appealed on his behalf. Rather, Friedman's appeal is currently pending before Judge Shadur. *See In re Harold E. Friedman (United States v. Dennis E. Quaid as Trustee)*, 138 B.R. 881. Therefore, we leave the propriety of the court's second holding to Judge Shadur and will only address the IRS' appeal. In doing so, we review the bankruptcy court's conclusions *de novo. In re Longardner & Assocs., Inc.*, 855 F.2d 455, 459 (7th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989).

## DISCUSSION

■ The issue we address on appeal is whether the estate of a debtor who files an individual petition for bankruptcy under the 1898 Bankruptcy Act[1] is entitled to carryover the debtor's prepetition NOLs. The bankruptcy court held that the estate was so entitled. The IRS contends that both of the court's articulated rationales for its holding must be reversed. Moreover, the IRS insists that there is no statutory authority for the court's conclusion. We agree and therefore reverse.

■ In order to prevail, the trustee must demonstrate a statutory basis for his position. It is well-established that "deductions are extensions of legislative grace and not matters of right." *Jerome Mirza & Assocs., Ltd. v. United States*, 882 F.2d 229, 232 (7th Cir.1989), *cert. denied*, 495 U.S. 929, 110 S.Ct. 2166, 109 L.Ed.2d 496 (1990). As such, a party may carryover a NOL only when support for such a deduction can be found in the clear language of a statute, appurtenant regulations, or legislative history. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934); *Jerome Mirza*, 882 F.2d at 232; *Colonial Sav. Ass'n & Subsidiaries v. Commissioner*, 854 F.2d 1001, 1006 (7th Cir.1988), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1556, 103 L.Ed.2d 859 (1989); *Patten Fine Papers v. Commissioner*, 249 F.2d 776, 779–80 (7th Cir.1957). Accordingly, it is clear that allowance of deductions cannot turn on general equitable considerations. *Deputy v. Du Pont*, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416 (1940). Moreover, the trustee bears the burden of proving that he is entitled to take the deduction, and the IRS' determinations are presumed to be correct. *Jerome Mirza*, 882 F.2d at 232.

Because no applicable statutory authority exists, the bankruptcy court incorrectly held that the estate was entitled to carryover the debtor's prepetition NOLs. *Cf. Richardson v. United States*, 386 F.Supp.

---

1. Congress repealed the Bankruptcy Act of 1898 in 1979. We note that the current Tax Code and Bankruptcy Code allow a bankruptcy estate to succeed to an individual debtor's tax attributes, including NOLs. *See* 26 U.S.C. § 1398(g)(1)–(7); 11 U.S.C. § 346(i) (same). These statutes, however, are inapplicable here because Luster filed for bankruptcy in 1978.

424, 427–28 (C.D.Cal.1974) (holding that "in the absence of any ... clear provisions" taxpayer was not entitled to the benefit of any unused NOLs possessed by the bankrupt estate upon termination of the bankruptcy proceedings in his post-bankruptcy individual income tax return), *aff'd*, 552 F.2d 291 (9th Cir.1977). The bankruptcy court itself recognized that "this issue had not been resolved ... by legislation." *In re Luster*, 134 B.R. at 634. The only potentially useful statutes are sections 381 and 382 of the 1954 Internal Revenue Code ("IRC"). These statutes, however, only apply to the transferability of NOLs in the context of certain corporate acquisitions, a situation not presented here. Furthermore, the more recent enactments in the Bankruptcy Code, 11 U.S.C. § 346(i), and IRC, 26 U.S.C. § 1398(g)(1)—statutes that specifically allow the transferability of a debtor's prepetition NOLs to the bankrupt's estate—are also inapplicable because these provisions were not effective in 1978. Finally, there is no evidence whatsoever that Congress intended these most recent enactments to clarify statutory provisions existing in the Bankruptcy Act or the 1954 IRC. *See* Bankruptcy Tax Act of 1980, S.Rep. No. 96–1035, 96th Cong., 2d Sess. 24 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 7017, 7039 (discussing the enactment of § 346(i) and § 1398(g)(1) and recognizing that "at present, there are no rules in the Internal Revenue Code" regarding "how tax attributes are to be allocated between the estate and the debtor"). Therefore, we reverse the bankruptcy court's holding.

The bankruptcy court articulated two independent rationales for its holding. First, it relied on *Libson Shops v. Koehler*, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957), and its progeny. *Libson Shops* involved a statutory merger of sixteen "brother-sister" corporations. The sixteen corporations were merged into a single similarly

controlled corporation which then sought to carryover the premerger NOLs of three of the brother-sister corporations against its postmerger income. *Id.* at 382–84, 77 S.Ct. at 990–92. The successor corporation premised its deduction on 26 U.S.C. § 122 of the 1939 IRC. Section 122 provided that "the taxpayer" who incurred the loss was the only party entitled to a NOL carryover. *Id.* at 385, 77 S.Ct. at 992.

The Court held that the successor corporation was not "the taxpayer" who incurred the loss within the meaning of section 122 and therefore could not carryover the NOLs. *Id.* at 390, 77 S.Ct. at 994. In defining "taxpayer," the Court created the "continuity of business enterprise" test. *Id.* at 386–88, 77 S.Ct. at 992–94; *see also* Bittker & Eustice, *Federal Income Taxation of Corporations and Shareholders* at 16–10 (4th ed. 1979) (hereinafter "Bittker & Eustice"). Because the successor corporation did not satisfy this test, the Court concluded that the NOL carryover was improper under section 122.

We conclude that the bankruptcy court improperly relied on *Libson Shops* and its progeny. The continuity of business enterprise test is not applicable here. Initially, we note that *Libson Shops* and its progeny are factually distinguishable. These cases address the transferability of NOL carryovers in the corporate acquisition context. They do not address the transferability of those losses between a debtor and a bankruptcy estate. More importantly, *Libson Shops'* analytical framework was premised on an ambiguity found in section 122 of the 1939 IRC, an ambiguity that no longer exists. In 1954, Congress repealed and replaced section 122 with sections 381 and 382. Thus, to the extent that *Libson Shops'* analytical framework remains viable under the 1954 IRC, if at all, it is limited to those situations arising under sections 381 and 382.[2] Indeed,

---

2. We need not address the troubling issue of whether *Libson Shops'* mandate survived the 1954 amendments. *See* Bittker & Eustice, at 16–90–95. Many courts and scholars have concluded that *Libson Shops'* analytical framework no longer has any applicability under the 1954

amendments, while others maintain that it may have some limited applicability in the corporate acquisition context. *See id.; see also National Tea Co. v. Commissioner*, 793 F.2d 864, 872 (7th Cir.1986) (holding that "[i]t is fair to conclude that the *Libson Shops* loss-tracing rule and other

the continuity of business enterprise test can have no independent existence outside the scope of section 122, 381, or 382. Since none of these provisions apply here and because *Libson Shops* is factually distinguishable, the bankruptcy court's reliance on it was inappropriate.

The bankruptcy court's second articulated rationale in support of its holding was based on the Bankruptcy Act. Specifically, the court held that Luster's prepetition NOL carryovers were property of the bankruptcy estate under section 70(a)(5) of the Act. *In re Luster*, 134 B.R. at 639. We disagree and therefore reverse.

Section 70(a)(5) was entitled "Title to Property." This statute vested in the trustee title to all of the property owned by the debtor on the filing date. Specifically, it provided that the bankruptcy estate includes "property, including rights of action, which prior to the filing of the petition [the debtor] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered." 11 U.S.C. § 110(a)(5) (1976).

The Supreme Court has established a framework for determining whether an item is "property" within the meaning of section 70(a)(5). First, obvious enough, the item must be "property." In defining property, the Court has noted that the dual "purposes of the Bankruptcy Act 'must ultimately govern.'" *Kokoszka v. Belford*, 417 U.S. 642, 645, 94 S.Ct. 2431, 2433, 41 L.Ed.2d 374 (1974) (quoting *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966)). The twofold purposes of the Act are to convert the estate into cash, distribute it among creditors, and to give the bankrupt a fresh start. *Kokoszka*, 417 U.S. at 645–46, 94 S.Ct. at 2433–34. Indeed, the Supreme Court has acknowledged that:

The main thrust of § 70(a)(5) is to secure for creditors everything of value the bankrupt may possess ... when he files his petition. To this end the term "prop-

erty" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.

*Segal*, 382 U.S. at 379, 86 S.Ct. at 515. At the same time, however, the Court has stressed that this generous construction must be tempered by Congress' intent "to leave the bankrupt free after the date of his petition to accumulate new wealth in the future" and thus "make an unencumbered fresh start." *Id.* at 380, 86 S.Ct. at 515. Second, in order to fall within section 70(a)(5)'s mandate, the debtor's "property" must have been in "alienable or leviable form when he file[d] his petition." *Id.* at 379, 86 S.Ct. at 515.

The Court in *Segal* applied this framework in the context of loss carrybacks. In *Segal*, two partners and their partnership had filed for bankruptcy in September, 1961. After the close of that calendar year, loss-carryback tax refunds were sought and obtained from the IRS on the partners' behalf. The partnership losses underlying the refunds were incurred in 1961 in the months preceding the September filing. Those losses were carried back to the years 1959 and 1960 to offset net income on which the partners had both paid taxes. *Id.* at 376, 86 S.Ct. at 513.

The *Segal* Court held that the loss carryback tax refund claim was the estate's property under section 70(a)(5). *Id.* at 380, 86 S.Ct. at 515. In doing so, the Court reasoned that passing the claim to the trustee would not hinder the bankrupt from starting with a clean slate because the administrative inconvenience of doing so would not prolong the bankruptcy proceeding. *Id.* Moreover, the Court further reasoned that the debtor, without a refund claim to preserve, would have more rather than less reason to earn income. *Id.* Additionally, creditors were clearly benefited by the Court's conclusion. Finally, the Court also reasoned that the refund claim was alienable. *Id.* at 384, 86 S.Ct. at 517. Therefore, because the loss carryback re-

---

judicially created schemes have been displaced for carryovers, since Congress has adopted its own statutory scheme in Sections 381 and 382

to regulate carryovers"). Because sections 381 and 382 are clearly inapplicable, however, we need not address this issue.

fund claim was transferable and "sufficiently rooted in the pre-bankruptcy past and so little entangled with the Debtors' ability to make an unencumbered fresh start," the Court concluded "that it should be regarded as 'property' under § 70(a)(5)." *Id.* at 379–80, 86 S.Ct. at 515.

In so holding, the Court rejected the debtors' argument that if a loss-carryback refund claim was property that "label must also attach to loss-carryovers." *Id.* at 381, 86 S.Ct. at 516. Although refusing to decide whether a prepetition NOL carryover was property under section 70(a)(5), the Court recognized that "a *carryover* into post-bankruptcy years can be distinguished conceptually as well as practically" from a *carryback* tax refund. *Id.* (emphasis added). For instance, the Court noted that because losses may be carried over (forward) for up to ten years in some cases, the individual debtor might incur substantial "inconvenience and hindrance" in that a trustee may unadvisedly keep the estate open in an attempt to use all of the estate's NOLs. *Id.* Additionally, unlike the carryback refund situation, the Court noted that in order to carryover a NOL, the loss must be "matched in some future year by earnings, earnings that might never eventuate at all." *Id.* Based on these differences, the Court rejected the debtors' argument that its holding, as a matter of law, rendered loss carryovers to be property under section 70(a)(5).

■■■ Although Luster's prepetition NOLs may have had some value on the filing date, we conclude that these losses are not property within the meaning of section 70(a)(5). First, as the *Segal* Court recognized, vesting the prepetition NOL carryover in the trustee could very well hinder the debtor's fresh start. *Id.; see also Davis v. Commissioner,* 69 T.C. 814, 829 (1978) (prepetition NOL carryovers are not property of the estate under 70(a)(5) and reasoning that "[i]f the loss carryover vested in the trustee in bankruptcy he might be encouraged to prolong administration of the bankruptcy estate in the vain hope of earning a profit to be offset by the [NOL] carryover"). Indeed, Congress has addressed this concern in the current Bankruptcy Code, not applicable here, by providing that unused prepetition tax attributes obtained by the trustee from the debtor revert back to the debtor at the conclusion of the bankruptcy case. 11 U.S.C. § 346(i)(2); *see also In re Prudential Lines, Inc.,* 928 F.2d 565, 572 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991). No such provision exists in the 1898 Bankruptcy Act. We note that Luster's prepetition NOLs were approximately $1,500,000, well above the estate's 1980 income. Moreover, as in *Segal,* allowing the debtor to retain the NOLs will encourage the debtor to earn more after discharge. *See Davis,* 69 T.C. at 829. Second, we have found no authority holding an individual's prepetition NOL carryover to be alienable or transferable. *See id.* (holding that "a [NOL] carryover of an individual is not transferable").[3] Therefore, we conclude that Luster's prepetition NOL carryovers do not constitute property within the meaning of section 70(a)(5) of the Bankruptcy Act.[4]

---

**3.** The bankruptcy court improperly concluded that an individual's prepetition NOL carryover was transferable. *See In re Luster,* 134 B.R. at 638 n. 9. The court disposed of the alienability issue in a footnote. Specifically, the court reasoned that the "IRS has not suggested" that the *Segal* Court's analysis of the alienability issue "would not also be applicable to loss carryovers." *Id.*

We find the *Segal* Court's analysis inapplicable and therefore reject the court's reasoning. In *Segal,* the IRS had already issued a refund that was being held in trust; accordingly, there was "no danger" that the Government might become embroiled in conflicting claims that would cause delay, embarrassment, and the chance of multiple liability. *Segal,* 382 U.S. at 384, 86 S.Ct. at 517. Such is not the case here. Therefore, the court inappropriately relied on *Segal* to resolve the alienability issue.

**4.** We note that such NOLs are property under section 541(a) of the current Bankruptcy Code. *See In re Prudential Lines, Inc.,* 928 F.2d at 571–73. This conclusion, however, rests on the broader definition of property that section 541 incorporates, and Congress' removal of the transferability requirement in the definition of property. *See In re Prudential Lines, Inc.,* 119 B.R. 430, 432 (Bkrtcy.S.D.N.Y.1990) (acknowledging that the "legislative history of § 541(a) makes clear that the definition of property 'will bring anything of value that the debtors have

This conclusion is consistent with scholarly authority. *See* Krause and Kapiloff, *The Bankruptcy Estate, Taxable Income and the Trustee in Bankruptcy*, 34 Fordham L. Review 401 (1965). In their article, the authors directly addressed the issue presented here. Although favoring a more expanded role of loss carryovers and carrybacks in the bankruptcy context, these commentators nevertheless conceded that under the Bankruptcy Act of 1898:

> *The trustee in bankruptcy may not avail himself of the benefits of the net operating loss carryover in the case of bankrupt individuals.* This is so whether the profits are realized as a result of the operation of a business, or as a result of gains in the liquidation of business assets, or as income from interest on moneys constituting assets of the estate or any other income of the estate. *The individual taxpayer who suffered a business loss is the sole person entitled to avail himself of the benefits therefrom.*

*Id.* at 414 (emphasis added) (citations omitted).

To the extent that *In re Beery*, 116 B.R. 808, 810 (D.Kan.1990), is inconsistent with our holding, it is expressly disagreed with. The court in *In re Beery* held that prepetition NOL carryovers were property of the bankruptcy estate under section 70(a)(5). *Id.* at 810. The case is arguably distinguishable in that the court explicitly found that the " 'fresh start' doctrine articulated in *Segal* has little importance here since the debtor was denied a discharge." *Id.* However, the court's failure to analyze the alienability requirement found in section 70(a)(5) and required by *Segal* leads us to ultimately reject the court's reasoning. Accordingly, we find any reliance on *In re Beery* unpersuasive.

## CONCLUSION

For the foregoing reasons, we reverse the bankruptcy court's holding that an individual debtor's prepetition NOL carryovers

into the estate,' ... including 'tangible and intangible property ... whether or not transferrable by the debtor' ") (citations omitted), *aff'd,*

are property of the estate under the Bankruptcy Act of 1898.

928 F.2d 565 (2nd Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991).