T.C. Memo. 1996-464


UNITED STATES TAX COURT


JOYCE E. AND JEROME G. BEERY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 26995-93.                    Filed October 16, 1996.


Joyce E. Beery and Jerome G. Beery, pro sese.

<u>Thomas F. Eagan</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' joint Federal income taxes for 1989, 1990, and 1991,
and accuracy-related penalties for 1989 and 1990, as follows:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|-----------------------|
| 1989 | $28,242 | $5,648 |
| 1990 | 24,401 | 4,880 |
| 1991 | 4,624 | --- |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement of some issues, the primary issue for decision is whether a net operating loss from 1975 (1975-NOL) can be carried forward to 1989, 1990, and 1991.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner Joyce E. Beery resided in Los Alamos, New Mexico, and petitioner Jerome G. Beery (petitioner) resided in Placitis, New Mexico.

During 1975, petitioner owned and managed in Colby, Kansas, two businesses as sole proprietorships -- a farm and a grain distributorship. Also during 1975, petitioner owned and managed in Colby, Kansas, a branch of Mayer-Gelbort-Leslie, Inc., a commodities trading firm based in Chicago, and petitioner made investments in commodities.

In his combined businesses, in 1975, petitioner incurred total net operating losses of $1,517,999 (1975-NOL).

On January 16, 1976, petitioner filed a chapter 11 petition in the U.S. Bankruptcy Court for the District of Kansas (Bankruptcy Court) to obtain protection from his creditors and to reorganize his business and personal debts, including debts relating to his farm, his grain distributorship, and his commodity investments.

On April 20, 1976, in the above proceeding and over petitioner's objection, the Bankruptcy Court converted petitioner's chapter 11 proceeding into a chapter 7 proceeding, adjudicating petitioner a bankrupt and subjecting petitioner's assets to liquidation. Petitioner appealed that decision to the U.S. District Court for the District of Kansas (District Court), in which appeal petitioner claimed that he qualified for "farmer" status under 11 U.S.C. secs. 1(17) and 22(b) (1970), which provisions exempt farmers from chapter 7 bankruptcy proceedings. In order to qualify for "farmer" status, under the above provisions as applicable to bankruptcy petitions filed in 1976, an individual must have been personally engaged in farming as his or her principal source of income. 11 U.S.C. sec. 1(17).[1]

On October 5, 1977, after an evidentiary hearing, the District Court, by written order, concluded that petitioner did not qualify for "farmer" status under 11 U.S.C. sec. 1(17) on the

---

[1]     Petitioner's bankruptcy proceedings were governed by the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544, as amended. The Bankruptcy Act of 1978 did not become effective until Oct. 1, 1979. Pub. L. 95-598, sec. 402(a), 92 Stat. 2549, 2682.

grounds that petitioner's income was not derived primarily from farming.  In its written order, with regard to petitioner's claimed 1975-NOL, the District Court expressly stated that, if all creditors' claims were considered valid, petitioner's farming, grain, and other business activities incurred the 1975-NOL of $1,517,999.

Petitioner appealed the decision of the District Court, and on May 14, 1982, the U.S. Court of Appeals for the Tenth Circuit affirmed the District Court's decision to deny petitioner's claim that he was exempt as a farmer from the chapter 7 bankruptcy proceeding.  In re Beery, 680 F.2d 705, 717 (10th Cir. 1982).

Prior to July 16, 1986, respondent determined and assessed a deficiency of $1,178,012 in petitioners' 1975 joint Federal income tax, plus interest and penalties.  On July 16, 1986, however, respondent, pursuant to a Request For Adjustment (Form 3870) that had been filed by petitioners, redetermined petitioners' 1975 joint Federal income tax and abated the assessment from $1,178,012 to zero, eliminating the interest and penalties.  The record herein does not explain respondent's action in abating the $1,178,012 tax deficiency assessed against petitioners for 1975, although respondent's action apparently relates to the 1975-NOL that was established in the course of petitioner's chapter 7 bankruptcy proceeding.

On October 5, 1987, petitioner filed in the Bankruptcy Court a motion to stay all bankruptcy proceedings and to enjoin any

settlements between the bankruptcy trustee and respondent with regard to the bankruptcy estate's Federal income tax liability. In the motion, petitioner contended that, on the Federal income tax returns the trustee had filed on behalf of petitioner's bankruptcy estate, the trustee improperly reflected and claimed carryforward deductions of petitioners' 1975-NOL.

On July 6, 1988, the Bankruptcy Court denied petitioner's motion to stay all bankruptcy proceedings and issued an order in which it held that the specific amount of the 1975-NOL (namely, $1,517,999) had been properly determined through settlement negotiations between the trustee and respondent, that the 1975-NOL should be treated as property of petitioner's bankruptcy estate, not of petitioner personally, and that the trustee was entitled to carry forward the 1975-NOL on the bankruptcy estate's Federal income tax returns until the bankruptcy estate exhausted the amount of the 1975-NOL or abandoned it (upon termination of the bankruptcy proceeding), or upon expiration of the 5-year period applicable to carry forward of the 1975-NOL.

On June 7, 1990, the District Court affirmed the Bankruptcy Court's decision regarding the bankruptcy estate's entitlement to the 1975-NOL, applying Segal v. Rochelle, 382 U.S. 375 (1966). In re Beery, 116 Bankr. 808 (D. Kan. 1990). In Segal v. Rochelle, supra, the Supreme Court held that a tax refund claim based upon a net operating loss carryback should be treated as property of the bankruptcy estate and not of the bankrupt.

Petitioner's bankruptcy estate was closed on December 2, 1993.

For each of the years 1976 through 1993, the trustee apparently filed Federal income tax returns on behalf of petitioner's bankruptcy estate. The trustee apparently claimed on those returns for 1976 through 1980 carryforward deductions relating to the $1,517,999 1975-NOL. The record in this case, however, does not reflect any of those returns and does not reflect the deductions or amounts thereof carried forward and claimed on the Federal income tax returns filed by the trustee on behalf of petitioner's bankruptcy estate.

For 1975 and 1977, the record does not indicate what individual Federal income tax returns were filed by petitioners. For 1976, petitioners apparently did not file an individual Federal income tax return. For 1978 through 1981, petitioners filed joint Federal income tax returns on which they did not claim any portion of the $1,517,999 1975-NOL as a carryforward deduction.

In 1982, however, petitioners filed amended joint Federal income tax returns for 1978 through 1981 on each of which they did claim the 1975-NOL as a carryforward deduction. For 1982 through 1991, petitioners filed timely joint Federal income tax returns on each of which they also claimed the 1975-NOL as a carryforward deduction.

The schedule below reflects the amount of the carryforward deductions relating to the $1,517,999 1975-NOL that petitioners claimed on their original and amended joint Federal income tax returns for 1976 through 1991.  As indicated in the schedule, petitioners did not attempt to carry back the 1975-NOL to any of the 3 years prior to 1975.

| | Amount of Claimed 1975-NOL Carryforward | |
| Year | Petitioners' Original Returns | Petitioners' Amended Returns |
|------|-------------------|-------------------|
| 1972 | --- | --- |
| 1973 | --- | --- |
| 1974 | --- | --- |
| 1975 | --- | --- |
| 1976 | --- | --- |
| 1977 | --- | --- |
| 1978 | --- | $35,008 |
| 1979 | --- | 33,203 |
| 1980 | --- | 45,891 |
| 1981 | --- | 18,623 |
| 1982 | $ 47,307 | --- |
| 1983 | 73,590 | --- |
| 1984 | 92,116 | --- |
| 1985 | 102,592 | --- |
| 1986 | 110,043 | --- |
| 1987 | 88,967 | --- |
| 1988 | 104,638 | --- |
| 1989 | 104,700 | --- |
| 1990 | 98,604 | --- |
| 1991 | 30,848 | --- |

On their 1989 joint Federal income tax return, petitioners claimed $7,414 in car and truck expenses associated with petitioner's farm and grain distributorship.

Respondent apparently allowed petitioners' carryforward deductions as claimed on petitioners' amended returns for 1978

through 1981, and respondent never audited petitioners' joint Federal income tax returns for 1982 through 1988, even though the carryforward deductions claimed on the amended 1978 through 1981 and 1982 through 1988 income tax returns were based on the same $1,517,999 1975-NOL that was the basis for the NOL carryforward deductions that were apparently claimed by the bankruptcy trustee on Federal income tax returns filed on behalf of petitioner's bankruptcy estate for 1976 through 1980.

In 1993, respondent audited only petitioners' 1989, 1990, and 1991 joint Federal income tax returns, and on September 30, 1993, respondent issued a notice of deficiency disallowing the carryforward deductions of $104,700, $98,604, and $30,848, respectively, claimed on those three returns with regard to the 1975-NOL. Respondent's disallowance of the claimed 1975-NOL carryforward deductions was based on the argument that, under section 172 as applicable to 1975, the period for carrying forward the 1975-NOL expired on December 31, 1980. Respondent also disallowed the $7,414 in car and truck expenses claimed on petitioners' 1989 joint Federal income tax return and determined the accuracy-related penalties.

OPINION

Deductions are a matter of legislative grace with respect to which taxpayers generally bear the burden of proof. Rule 142(a);

New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Under pre-1980 law, neither bankruptcy law nor the Internal Revenue Code clearly established the ownership of tax attributes of a bankruptcy estate. Mueller v. Commissioner, 60 T.C. 36, 44 n.6 (1973), affd. in part, revd. in part, and remanded 496 F.2d 899 (5th Cir. 1974); 1A Collier on Bankruptcy, par. 9.02(3)(a), at 9-6 (15th ed. 1996). As indicated above, the Supreme Court in Segal v. Rochelle, supra, applying the provisions of the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544, as amended, held that a claim for refund based on an NOL carryback was to be treated as property of the bankruptcy estate and not of the individual taxpayer. The Supreme Court in Segal expressly reserved the issue of whether the same rule applied to NOL carryforwards.

In Davis v. Commissioner, 69 T.C. 814 (1978), this Court, applying the Bankruptcy Act of 1898, held that, unlike refund claims based on NOL carrybacks, NOL carryforwards arising from prebankruptcy businesses belonged not to the bankruptcy estate but to the individual taxpayer. See also Matter of Luster, 981 F.2d 277 (7th Cir. 1992).

As part of the Bankruptcy Tax Act of 1980, Pub. L. 96-589, 94 Stat. 3389, Congress clarified this area of the law and enacted section 1398, which directly addresses the tax implications of bankruptcy. Section 1398 expressly provides that

the bankruptcy estate of a debtor who is an individual succeeds to his NOL carryforwards and that upon termination of the bankruptcy estate the individual taxpayer succeeds to any tax attributes of the bankruptcy estate. Sec. 1398(g)(1), (i) (1994). Section 1398, however, is not applicable to bankruptcy proceedings, such as petitioner's, that were commenced prior to March 25, 1981. Pub. L. 96-589, sec. 7(b), 94 Stat. 3412.

As alluded to above, however, in 1990, the District Court, with jurisdiction over petitioner's bankruptcy proceeding, held specifically that petitioner's 1975-NOL was to be treated as property of the bankruptcy estate and not of petitioner.

Petitioners argue that under Segal v. Rochelle, 382 U.S. 375 (1966), they, not petitioner's bankruptcy estate, should be regarded as owners of petitioners' 1975-NOL and that petitioner's bankruptcy estate was never entitled to claim the 1975-NOL. Respondent argues that the District Court's holding that the 1975-NOL should be treated as property of the bankruptcy estate, and not of petitioner, should collaterally estop petitioners on this issue.

Petitioners' and respondent's arguments, however, as to ownership of the 1975-NOL need not be decided. Based on the analysis set forth below and regardless of any question as to ownership of the 1975-NOL, petitioners' attempt in this case to carry forward and apply the 1975-NOL to offset their taxable

income for years far beyond 1980 (namely, to 1989, 1990, and 1991) is not allowable.

Net operating losses and the carryback and carryforward thereof are to be determined pursuant to the law applicable to the year in which the losses occurred, without regard to the law applicable to other years to which losses are carried back or forward. Reo Motors, Inc. v. Commissioner, 338 U.S. 442, 446 (1950); sec. 1.172-1(e)(1) and (2), Income Tax Regs. Section 172, as applicable to 1975, provides a maximum net operating loss carryback period of 3 years immediately preceding the year of the loss and a maximum net operating loss carryforward period of 5 years immediately following the loss.

Generally, net operating losses are first carried back and then carried forward until the losses are fully absorbed or until the carryforward period expires. Sec. 172(b); sec. 1.172-1, Income Tax Regs. Neither section 172 nor any other provision of the Internal Revenue Code or the bankruptcy law in effect for 1975[2] provides for any tolling, during bankruptcy proceedings, of the period for which NOL deductions may be carried forward.

Section 806(a) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1598, extended the carryforward period under

[2] The Bankruptcy Act of 1898, as amended by the Chandler Act of June 22, 1938, ch. 575, sec. 314, 52 Stat. 840, 907, provides for a stay once a bankruptcy petition has been filed only of the "commencement or continuation of any proceeding to enforce any lien upon the property of a debtor" for cause shown or of any other judicial proceeding.

section 172 to 7 years for net operating losses incurred in any taxable year ending after December 31, 1975.  Section 207(a)(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 225, further extended the carryforward period under section 172 to 15 years for net operating losses incurred in any taxable year also ending after December 31, 1975.  Pub. L. 97-34, sec. 209(c)(1)(A), 95 Stat. 226.

Section 102(d)(2) of the Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2370, clarified that the 15-year carryforward period of section 207(a)(1) of the Economic Recovery Tax Act of 1981 did not apply to any amount which, under the law in effect on the day before enactment of the Act, could not be carried to a taxable year ending in 1981.  The 1976 and 1981 amendments to section 172, therefore, did not extend the 5-year carryforward period for petitioners' 1975-NOL.

In 1978, Congress enacted the Bankruptcy Act of 1978, which expressly provided in certain circumstances for suspension, during bankruptcy proceedings, of periods of limitation applicable to use by a bankrupt taxpayer of tax attributes not utilized by a bankruptcy estate.  11 U.S.C. sec. 346(i)(2) (1994).[3]  That statute provided that the suspension provisions of

_____

[3]     11 U.S.C. sec. 346(i)(1) and (2) provides as follows:

        (i)(1) In a case under chapter 7, 12, or 11 of this
    title concerning an individual, the estate shall succeed to
    the debtor's tax attributes, including--
                                            (continued...)

11 U.S.C. sec. 346(i)(2) applied notwithstanding State and local tax laws, but subject to the Internal Revenue Code.  11 U.S.C. sec. 346(a).[4]

These statutory provisions do not apply to the instant case because petitioner's bankruptcy petition was filed prior to October 1, 1979, the effective date of the Bankruptcy Act of 1978.  They have been interpreted to establish that for bankruptcy petitions to which the Bankruptcy Act of 1978 is applicable, periods of limitation under the Internal Revenue Code are not subject to the specific suspension provisions of 11 U.S.C. sec. 346(i).  Firsdon v. United States, __ F.3d __ (6th

---

[3](...continued)
            (A) any investment credit carryover;
            (B) any recovery exclusion;
            (C) any loss carryover;
            (D) any foreign tax credit carryover;
            (E) any capital loss carryover; and
            (F) any claim of right.

      (2) After such case is closed or dismissed, the debtor shall succeed to any tax attribute to which the estate succeeded under paragraph (1) of this subsection but that was not utilized by the estate.  The debtor may utilize such tax attributes as though any applicable time limitations on such utilization by the debtor were suspended during the time during which the case was pending.

[4]   11 U.S.C. sec. 346(a) provides as follows:

      (a) Except to the extent otherwise provided in this section, subsections (b), (c), (d), (e), (g), (h), (i), and (j) of this section apply notwithstanding any State or local law imposing a tax, but subject to the Internal Revenue Code of 1986.

Cir., Sept. 12, 1996); In re Page, 163 Bankr. 196, 197-198

(Bankr. D. Kan. 1994).

As explained in the recent opinion of the Court of Appeals

for the Sixth Circuit --

The * * * [taxpayers] argue that the statutory
period was in fact tolled during the pendency of their
bankruptcy proceeding, under section 346(i)(2) of the
Bankruptcy Code, 11 U.S.C. sec. 346(i)(2).  [11 U.S.C.]
Section 346(i)(2), like I.R.C. section 1398(i),
provides that at the close of a bankruptcy proceeding,
debtors shall succeed to any unused tax attributes
(including NOLs) to which the estate originally
succeeded at the inception of the proceeding.  Unlike
I.R.C. section 1398(i), though, 11 U.S.C. sec.
346(i)(2) goes on to state:  "The debtor may utilize
such tax attributes as though any applicable time
limitations on such utilization by the debtor were
suspended during the time during which the case was
pending."  On its face, this language appears to
support the * * * [taxpayers'] contention that I.R.C.
section 6511(a) should have been tolled.  The sweep of
this sentence is significantly circumscribed, however,
by [11 U.S.C.] sec. 346(a), which states:

Except to the extent otherwise provided
in this section, subsections (b), (c), (d),
(e), (g), (h), (i), and (j) of this section
apply notwithstanding any State or local law
imposing a tax, but subject to the Internal
Revenue Code of 1986.

11 U.S.C. sec. 346(a).  In this context, "subject to
the Internal Revenue Code" essentially means that the
named Bankruptcy Code subsections, including the
tolling provision in subsection (i), have no effect on
the Federal tax laws.  Such is the holding in In re
Page, 163 B.R. 196, 197-98 (Bankr. D. Kan. 1994), where
the court found [11 U.S.C.] sec. 346(a) "not extremely
well-drafted" but clear enough to make subsection (i)
applicable "only to State and local laws."  [Firsdon v.
United States, __ F.3d __ (6th Cir., Sept. 12, 1996)].

We hold that the period applicable to the carrying forward of petitioners' 1975-NOL expired on December 31, 1980, and was not affected or suspended by petitioner's bankruptcy proceeding.

Petitioners argue that respondent should be equitably estopped from asserting the bar of the 5-year period, as applicable to 1975, on the carryforward of petitioner's 1975-NOL. Petitioners' estoppel argument is based on alleged misrepresentations made to petitioners by respondent's representatives regarding whether the 15-year carryforward period available under section 172, as amended in 1981, applied to petitioner's 1975-NOL and on respondent's failure to disallow petitioners' claimed carryforward deductions relating to the 1975-NOL as claimed on petitioners' joint Federal income tax returns for 11 years (namely, for 1978 through 1988).

Equitable estoppel against the Government is considered an extraordinary remedy and is applied with the "utmost caution and restraint". The Board of County Commrs. v. Isaac, 18 F.3d 1492, 1499 (10th Cir. 1994); Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977).

Generally, equitable estoppel is unavailable against the Government without a showing of at least the following elements by the claimant: (1) The Government made false representations with regard to material facts; (2) the claimant was ignorant of the true facts; (3) the claimant reasonably relied on the Government's misrepresentations; and (4) the claimant relied on

the misrepresentations to his detriment.  Rapp v. United States Dept. of Treasury, Office of Thrift Supervision, 52 F.3d 1510, 1516 (10th Cir. 1995); The Board of County Commrs. v. Isaac, supra; Estate of Emerson v. Commissioner, supra  at 617-618; Underwood v. Commissioner, 63 T.C. 468, 477-478 (1975), affd. 535 F.2d 309 (5th Cir. 1976).  The detrimental-reliance test includes the requirement that the party asserting estoppel, as a result of the misrepresentation, must have been deprived of something to which it was entitled.  Heckler v. Community Health Servs., Inc., 467 U.S. 51, 61 (1984); Kennedy v. United States, 965 F.2d 413, 418 (7th Cir. 1992).

Respondent, among other things, argues that because petitioners, for the years before us, were not entitled to the 1975-NOL, petitioners were not deprived of something to which they were entitled.  We agree.

Because the 5-year period for the carryforward of petitioner's 1975-NOL expired on December 31, 1980, petitioners, under the law as applicable to 1975, were not entitled to carry forward the 1975-NOL to 1989, 1990, and 1991, and petitioners were not deprived of any NOL carryforward to which they were entitled.

With regard to the $7,414 claimed car and truck expenses and to the accuracy-related penalties under section 6662(a) for substantial understatements of income tax for 1989 and 1990, petitioners have failed to make any separate arguments, and we

hold that petitioners have failed in their burden of proof.  Rule 142(a).  We sustain respondent's disallowance of the car and truck expenses, and we sustain respondent's imposition of the accuracy-related penalties under section 6662(a).

Respondent filed a motion for partial summary judgment prior to trial.  Because the issues raised therein have been decided in this opinion, respondent's motion for partial summary judgment will be denied as moot.

Respondent's motion for partial summary judgment will be denied as moot, and decision will be entered under Rule 155.