**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 12 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOYCE E. BEERY and JEROME G.
BEERY,

          Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

          Respondent-Appellee.

No. 04-9005
(T.C. No. 12113-01)
(Tax Court)

---

**ORDER AND JUDGMENT** *

---

Before **LUCERO** , **PORFILIO** , and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellants Joyce and Jerome Beery petition this court for review of a decision of the United States Tax Court sustaining the assessment of tax deficiencies and penalties against them for the years of 1998 and 1999 by the Commissioner of the Internal Revenue Service. Appellants raise five issues in their two-page opening brief alleging tax court error. As will be shown in detail below, the appellants' allegations are premised on misrepresentation or mischaracterization of the tax court record and misunderstanding of the legal principles at issue. Consequently, we exercise our jurisdiction under 26 U.S.C. § 7482(a)(1) and affirm.

BACKGROUND

Mr. Beery filed a chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the District of Kansas on January 16, 1976 ("Kansas Bankruptcy").[1] The Kansas Bankruptcy was finally closed on December 2, 1993. On September 29, 1987, the trustee in the Kansas Bankruptcy filed Form 1041 income tax returns (fiduciary income tax return forms) on behalf of the estate for the years 1976-1980 and 1982-1986. A review of these returns reveals that, on some, the

---

[1] The Kansas Bankruptcy was subsequently converted to a chapter 7 liquidation.

trustee deducted net operating losses (NOLs) from the years 1975 and 1976 on behalf of the estate. [2]

Appellants also attempted to deduct NOLs from 1975 on the joint personal returns they filed for 1978-1999. The NOLS for 1978-1988 were apparently not disputed, and it appears that the government failed to audit the appellants' returns for some, if not all, of those years. The government did, however, disallow the NOL deductions claimed in the 1989-1991 tax returns. Appellants challenged this decision. In 1994, while the case was pending before the tax court, Mr. Beery filed another chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of New Mexico ("New Mexico Bankruptcy"). In 1996, the tax court in *Beery I* sustained the government's determination disallowing the NOL deductions claimed in the 1989-1991 tax returns. The tax court held that the NOL from 1975 could not be carried forward to offset income for more than five years after the loss arose. *Beery*, 72 T.C.M. (CCH) at 1017-18.

The government also disallowed the NOL deductions claimed by appellants on the 1992-1994 tax returns and appellants again petitioned the tax court for

---

[2]     "[D]uring 1975, [Mr. Beery] owned and managed in Colby, Kansas, two businesses as sole proprietorships–a farm and a grain distributorship. Also during 1975, [Mr. Beery] owned an managed in Colby, Kansas, a branch of Mayer-Gelbort-Leslie, Inc., a commodities trading firm based in Chicago, and [Mr. Beery] made investments in commodities." *Beery v. Comm'r*, 72 T.C.M. (CCH) 1013, 1014, 1996 WL 591939 (1996) ("*Beery I*").

review of that deficiency. On April 9, 1997, the tax court issued an order partially granting the government's motion for summary judgment in regard to the 1992-1994 tax returns, again finding that the appellants were not allowed to deduct a NOL from 1975 on those returns (" *Beery II* "). As Mr. Beery explained to the tax court in the matter at hand: "The judge [in *Beery II* ] simply looked at the first case [ *Beery I* ] and said he didn't have to hear it on the merits since it was the same issue, and issued an order." R., Doc. 10 at 17. The court in *Beery II* , therefore, ordered a decisional document to be submitted to reflect its partial grant of summary judgment.

On October 24, 1997, however, before the decisional document was entered, the tax court dismissed Mr. Beery from *Beery II* on the ground that the petition he had filed violated the automatic stay arising from the New Mexico Bankruptcy. [3] The same potential problem existed with *Beery I* . On March 19, 1998, the court in the New Mexico Bankruptcy, however, entered an order granting the government retroactive relief from the automatic stay to permit "the United States Tax Court to take all steps necessary to enter a Decision in [ *Beery I*] and conclude its case and to permit the IRS to assess [appellants'] additional tax liabilities for the years 1989, 1990 and 1991." R., Exs. 26-J and 27-J.

---

[3] The order remained applicable to Mrs. Beery, however.

-4-

No audits were performed on the appellants' tax returns from the years 1995-1997, so the NOL deductions for those years were not disallowed. The returns for 1998 and 1999 were audited, however, and the NOL deductions were disallowed, resulting in the deficiencies and penalties at issue.

The appellants filed their petition for review in the tax court arguing that the NOL deductions were available in 1998 and 1999 because they were "entitled to [an] NOL carryforward from [the Kansas Bankruptcy]." R., Doc. 1 at 1. Appellants claimed that the trustee in the Kansas Bankruptcy did not deduct the entire NOL from 1975, that they should have been allowed to carry forward that loss for more than five years, and that the decision in *Beery I* was entered in violation of the automatic stay in the New Mexico Bankruptcy, despite the retroactive relief from stay granted by the court in that bankruptcy. The tax court found that the appellants' NOL deductions on their 1998 and 1999 returns were improper, that the issue had been settled in *Beery I*, that the holding in *Beery I* was not a violation of the stay, and that the only proof presented that the 1975 NOL had not been fully exhausted by 1998 was Mr. Beery's self-serving testimony. The tax court sustained the government's determination as to the deficiencies and penalties, and the appellants appealed.

ANALYSIS

"[We] review the tax court's decision 'in the same manner and to the same extent as decisions of the district courts . . . tried without a jury.'" *Estate of True v. Comm'r*, 390 F.3d 1210, 1217 (10th Cir. 2004) (quoting 26 U.S.C. § 7482(a)(1)). "Therefore, we review legal questions de novo and factual questions for clear error." *Id*.

> The appellants' first issue on appeal reads:
>
> The Court apparently overlooked or ignored the disputed stipulations and incorporated them in the opinion as findings of fact. The respondent offered no evidence at trial regarding the disputed stipulations. They were therefore incorrectly taken as findings of fact.

Aplt. Opening Br. at 1. On April 8, 2003, the parties filed a Stipulation of Facts with the tax court setting forth a number of uncontested facts and submitting a number of exhibits but, in certain sections, pointing out that the parties disagreed about the conclusions to be drawn from those facts and exhibits.[4] For example, of the six "disputed" stipulations relevant to this appeal, the first three submitted copies of past income tax returns and referenced the amounts of the NOLs deducted on those returns. *Id*. at 2-3, paras. 5-7 (submitting Exs. 4-J through 22-J). These stipulations also reflected that appellants disputed the amounts set

_____

[4]    Although Mr. Beery refers to these as "disputed" stipulations, he does not argue that the actual content of the stipulations is incorrect.

forth in the returns.  *Id*.  The fourth "disputed" stipulation recognized the existence of the ruling in *Beery I*, but stated that the appellants disputed the validity of that ruling.  *Id*. at 4, para. 10.  The fifth "disputed" stipulation agreed that an order for retroactive relief had been entered allowing *Beery I* to stand, but recognized that the appellants disputed the validity of that order.  *Id*. at 4-5, para. 11 (submitting Exs. 26-J through 28-J).  The final "disputed" stipulation involved *Beery II* and reflected that the appellants contended that the decision in *Beery II* was invalid.  *Id*. at 5, para. 13.

Appellants' first point is meritless.  In the tax court's Memorandum Findings of Fact and Opinion, the court stated "[s]ome of the facts have been stipulated and are so found.  The stipulation of facts is incorporated herein by this reference."  R. Doc. 13 at 2.  Appellants' interpretation of these statements as evidence the trial court "overlooked" or "ignored" appellants' disagreements with the documentary evidence outright, Aplt. Opening Br. at 1, is inconsistent both with the tax court's findings and with the proceedings at trial.  When the stipulation was presented to the tax court, the government directed the court's attention to the fact that appellants disputed the amounts set forth in some of the admitted documents.  R., Doc. 10 at 4.  The court responded, "I noticed that when I went through it," then turned to Mr. Beery and stated:  "Mr. Beery, is that correct?  No reserved objections [to the stipulation or documents], however you

-7-

do dispute the accuracy of certain of the information contained in the documents, is that right?" *Id*. Mr. Beery responded: "That's correct, Your Honor." *Id*. The court then entered the exhibits into evidence and filed the stipulation in the record. *Id*. at 5.

The tax court, therefore, had before it documentary evidence, the existence of which was undisputed by the parties. Also undisputed was the fact that the appellants questioned the correctness or validity of some of that evidence. The fact that the tax court made findings consistent with the content of the documentary evidence does not mean that appellants' argument against such content was "overlooked or ignored," Aplt. Opening Br. at 1; it simply means that appellants' argument was not persuasive.

Appellants' second point on appeal reads: "[Mr.] Beery's testimony was offered under oath and not disputed by the respondent, therefore the court has no option, it must accept it as factual." *Id*. This case turned mostly on the holding in *Beery I* that a NOL could not be carried forward for more than five years. The New Mexico Bankruptcy court granted retroactive relief from the automatic stay to allow the decision in *Berry I*. The fact that Mr. Beery testified that he disagreed with *Beery I* and with the granting of retroactive relief from the stay does not mean that his testimony on these points was "not disputed" or that the tax court was required to believe his testimony over the documentary evidence.

Appellants' third point on appeal reads:

> On page 8 of the opinion the Court states "[Appellants] do not contend that Section 7491(a) applies to this case." The Court must apply the burden of proof whether or not the [Appellants] bring up the issue. It is, after all, the law. Without the disputed stipulations being included as findings of fact the respondent has failed to meet the burden of proof standard. Beery's testimony establishes that the NOL deductions are legitimate.

Aplt. Opening Br. at 1-2. In its ruling, the tax court recognized that a taxpayer has the burden of proving entitlement to a deduction but also stated:

> [w]here the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the tax liability of the taxpayer, [under § 7491(a)] the burden of proof shifts to the Secretary, but only if the taxpayer has complied with substantiation requirements, maintained all required records, and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews. Sec. 7491(a). Petitioners do not contend that sec. 7491(a) applies to this case.

R., Doc. 13 at 8 n.7. Again, we disagree with the appellants' interpretation of the tax court's ruling. The ruling does not imply that the burden *would* have been shifted to the government *if* appellants had made such an argument. The tax court simply recognized that in some cases the burden may shift to the government, implicitly found that the appellants in this case did not produce enough evidence to shift the burden, and noted that the appellants had not even argued that enough evidence had been presented to do so. The tax court's comment on appellants' failure to argue the issue was inconsequential.

The appellants' fourth point on appeal reads:

On page 15 of the opinion is the statement by the Court that "The record does not contain one iota of credible evidence that []petitioners had a reasonable basis for claiming the disputed NOL carryforward deductions or that they acted in good faith by doing so." To the contrary, Beery testified that the IRS, after questioning the deduction for previous years, had allowed the NOL deduction. That was the only evidence presented to the court regarding whether the petitioners had a reasonable basis for using the NOL. The respondent presented no evidence of any kind that the IRS has not allowed the deduction for previous years. In the case of accuracy-related penalties the IRS has the burden of proof and they failed to meet that burden.

Aplt. Opening Br. at 2. [5] Once again, appellants misstate the record. It is clear that there were years when the government did not question the appellants' NOL deductions. The evidence before the tax court, however, showed that *Beery I* disallowed appellants' attempts to deduct NOLs from 1975 on their 1989, 1990 and 1991 returns. While the appellants dispute the validity of this decision, they do not dispute its existence. Similarly, evidence regarding the ruling in *Beery II* that the deductions would not be allowed was also before the court. Again, although the appellants contest the validity of this decision, they do not contest the existence of the order. Although Mr. Beery was dismissed from the case after the government's motion for summary judgment was granted, the judgment

---

[5] U.S.C. § 6664(c)(1) provides that the accuracy-related penalties at issue in the case at hand shall not be imposed "to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."

remained applicable to Mrs. Beery and Mr. Beery must have been aware of the ruling.

It is clear, therefore, that at the time they filed the contested income tax returns the appellants were aware that the claimed deductions had been disallowed on previous returns because of the five-year cut-off. The tax court evidently found Mr. Beery's testimony that the government had previously accepted NOL deductions, that the appellants therefore had a reasonable basis for claiming the disputed NOL carryforward deductions, and that they acted in good faith by doing so, not to be credible, stating "[appellants'] entire course of conduct reflects a determined effort to claim undocumented and/or unuseable NOL carryforwards from 1975 over a period of many years while ignoring applicable law and relevant facts." R., Doc. 13 at 15. Credibility determinations, like other findings of fact, are the province of the tax court unless clearly erroneous. *Estate of True v. Comm'r,* 390 F.3d 1210, 1217 (10th Cir. 2004); *Merchs. Nat'l Bank of Topeka v. Comm'r*, 554 F.2d 412, 416 (10th Cir. 1977) ( "[T]he credibility to be given a witness is a matter for the tax court.").

Appellants' fifth and final point on appeal reads:

The petitioners were not allowed to present any legal arguments at trial, see transcript at page 37, line 20. This in spite of the fact that the respondent made numerous legal arguments, including at least one citation, throughout the trial. Transcript, page 10, line 14. Further the petitioner deferred an opening statement until the conclusion and was not allowed to give that statement.

-11-

Aplt. Opening Br. at 2. Appellants' fifth point appears to be an attempt to raise a due process argument. Once again, the appellants' factual description fails to accurately represent the reality of the tax court proceedings. A review of the transcript reveals that at the beginning of the hearing the court noted, and Mr. Beery confirmed, that Mr. Beery had not filed a trial memorandum in the case. R., Doc. 10 at 5. Mr. Beery asked the court to allow him to defer his opening statement until the close of the case, to which the court responded:

> That's fine. Wait, except, Mr. Beery, don't assume you're going to have an opportunity to say anything at the end of the case. We'll talk about what transpires at the end of the case, whether there are filing briefs or closing argument of some kind . . . .
>
>  . . . .
>
> I will, however, permit you to make an opening statement–if you wish to do so, you don't have to–after Respondent makes his opening statement.

*Id.* at 5-6. Mr. Beery responded: "Thank you, Your Honor, I understand." *Id.* at 6. Following the respondent's opening statement, the judge asked "Mr. Beery, do you wish to make any statement?" *Id.* at 13. Mr. Beery said that he did, was sworn in as a witness, and proceeded to present his argument. Contrary to his allegations, Mr. Beery did present legal arguments during the hearing. When he attempted to quote case law supporting these arguments, however, the tax court judge told him that "[t]he purpose of this proceeding right now is to take any

factual testimony . . . that you wish to give." R., Doc. 10 at 17.    [6] Later in the proceeding, Mr. Beery again asked to quote case law to support his legal argument that *Beery I* was invalid on the basis that "instead of asking for the stay to be annulled, [the government] asked for it to be lifted." *Id*. at 22. The court refused his request, stating "I'll give you an opportunity to make a post-trial filing." *Id*. Mr. Beery subsequently asked: "At what point am I allowed to make legal arguments, Your Honor?" to which the court replied, "I'm going to talk with you about that once the evidence is completed in this case." *Id*. at 23. At the end of the presentation of evidence, the court closed the evidentiary record and then, after a lengthy discussion, gave the parties ninety days to file simultaneous post-trial opening briefs, with forty-five days allowed thereafter for reply briefs, a schedule to which Mr. Beery did not object. The tax court was extremely clear with Mr. Beery as to what it was requesting:

> What I'm interested in hearing from you is–I want, whatever you file, I want proposed findings of fact that are predicated on the factual record in this case, which is very slim. And which tells me basically what you would have me find as facts in this case, with a–at least some indication of where I would find support for it in the record.
>
> And then a statement of your legal position, making whatever argument you wish to make. You know what Respondent's arguments are because they were laid out in the trial memoranda.

---

[6] The judge spent a large part of the hearing attempting to determine if Mr. Beery had any evidence, other than his own testimony, that a NOL from 1975 existed.

And your task, as far as I'm concerned, is to give me a coherent, intelligible explanation of why you think Respondent's position is wrong.

*Id*. at 36-37. After giving these instructions, the tax court began to stand in recess but was interrupted by Mr. Beery, again inquiring about when he would have the opportunity to discuss case law. *Id*. at 37. The tax court patiently explained that Mr. Beery could discuss case law in his post-trial briefs, stating:

[L]et me just explain. I'm more than happy to talk to the parties in many cases, but because we do have a post-trial filing process that permits parties to give their legal arguments in writing, it generally makes for a more coherent presentation of the argument than simply standing up and citing cases.

So, I really don't feel a need for oral argument, given the fact that I am permitting you to file post-trial arguments in writing.

*Id*. at 38. Appellants failed to file an opening post-trial brief, nor did they file a response to the opening post-trial brief filed by the government.

Appellants, therefore, have no room to complain on appeal. Mr. Beery was told that he could only defer his opening statement until after respondent gave his statement. This is what occurred. Further, appellants squandered their opportunity to present legal argument to the court when they failed to file either a trial memorandum or, after the tax court went out of its way to explain the briefing process in detail, the ordered post-trial briefs.

Consequently, the appellants' petition for review of the December 4, 2003, decision of the tax court is DENIED. The mandate shall issue forthwith.

Entered for the Court

Bobby R. Baldock
Circuit Judge